ELI LILLY AND COMPANY, Appellee,

v.

The HOME INSURANCE COMPANY,
et al., Appellants.

No. 685S243.

Supreme Court of Indiana.

Sept. 12, 1985.

Theodore R. Boehm, Christopher G. Scanlon, Baker & Daniels, Indianapolis, Ralph Earle, II, Michael A. Nardolilli, Baker & Daniels, Washington, D.C., for appellee.

George Marshall Moriarty, Kenneth W. Erickson, Constance Burr Evans, Ropes & Gray, Boston, Mass., Michael Nussbaum,

Earl C. Dudley, Jr., Nussbaum, Owen & Webster, Washington, D.C., for Certain Underwriters at Lloyd's and Companies in the London Market.

Dennis M. Flannery, A. Stephen Hut, Jr., Wilmer, Cutler & Pickering, Washington, D.C., for Ins. Co. of North America, et al.

Jeffrey Kaufman, Hall, Henry, Oliver & McReavy, San Francisco, Cal., Donald M. Gilberg, Levy, Bivona & Cohen, Washington, D.C., for Fireman's Fund Ins. Co.

Sheila L. Birnbaum, Irene A. Sullivan, Skadden, Arps, Slate, Meagher & Flom, New York City, for The Home Ins. Co.

Lawrence E. Carr, Jr., James F. Lee, Jr., Carr, Goodson & Lee, P.C., Washington, D.C., for The Travelers Indem. Co.

James E. Rocap, III, Stephen J. Nightingale, Miller, Cassidy, Larroca & Lewin, Washington, D.C., for Aetna Cas. & Sur. Co., et al.

James P. Schaller, M. Elizabeth Medaglia, Jackson & Campbell, P.C., Washington, D.C., for American Home Assurance Co., et al.

Brendan V. Sullivan, Jr., John J. Buckley, Jr., Williams & Connolly, Washington, D.C., for American Motorists Ins. Co., et al.

R. Harrison Pledger, John A. Blazer, McLean, Va., for St. Paul Fire & Marine Ins. Co.

William A. Ehrmantraut, William John Hickey, Jr., Donahue, Ehrmantraut & Montedonico, Chartered, Rockville, Md., for Zurich Ins. Co.

Richard H. Gimer, Hamel & Park, Washington, D.C., for Mut. Fire, Marine & Inland Ins. Co., et al.

Brian C. Shevlin, Shevlin, Artz & Curtis, Arlington, Va., for Interstate Fire & Cas. Co., et al.

James C. Gregg, James E. Greene, Macleay, Lynch, Bernhard & Gregg, Washington, D.C., for Nat. American Ins. Companies, et al.

GIVAN, Chief Justice.

This cause comes before this Court on the certification of three questions of state law by the United States Court of Appeals for the District of Columbia Circuit. *Eli Lilly and Co. v. Home Insurance Co.* (D.C.Cir.1985), 764 F.2d 876. This Court has jurisdiction to answer the certified questions. Ind.R.App.P. 15(O).

On March 9, 1982, Eli Lilly and Company filed this declaratory judgment action in the United States District Court for the District of Columbia. Named as defendants were the various insurance companies that insured Lilly from 1947, when Lilly first manufactured and sold the drug diethylstilbestrol (DES), to 1976, when the insurers refused to insure DES risks. The suit involves the scope of products liability insurance coverage for claims arising from DES-related illnesses. *Id.* at 878. The basic dispute concerns what must happen during a particular policy period to invoke insurance coverage for that period, described by the insurers as the trigger of coverage.

From the late 1940's until 1971, DES was prescribed to pregnant women for the purpose of preventing spontaneous miscarriages. In 1970, researchers reported a significant statistical connection between ingestion of DES by pregnant women and the later development of vaginal clear-cell adenocarcinoma, vaginal adenosis and other reproductive tract disorders in daughters of DES users who were *in utero* at the time of the DES ingestion.

For a twenty-year period commencing in 1947, Lilly was one of the major manufacturers and sellers of DES. Lawsuits arising from DES-related illnesses began in 1972. At the time Lilly filed for summary judgment in this action, approximately 650 lawsuits had been filed against Lilly, and additional suits have since been filed.

On April 12, 1984, the District Court, in a memorandum opinion, granted Lilly's motion for summary judgment. The court determined that a conflict of laws existed and that Indiana law should govern. The court also determined that under Indiana law the extrinsic evidence offered by the insurers was not relevant in construing the

insurance contracts. The court also held that the Indiana courts would follow *Keene Corp. v. Insurance Co. of North America* (D.C.Cir.1981), 667 F.2d 1034, *cert. denied* (1982), 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875, and adopt a multiple trigger interpretation of the insurance contracts. Under the *Keene* approach, originally applied in the context of asbestos-related illnesses, each insurer on the risk at any time between the initial ingestion of DES and the subsequent manifestation of a DES-related illness would be liable to Lilly for indemnification. *See Id.* at 1041.

The insurers appealed that decision. While agreeing that Indiana law controls, the Court of Appeals found themselves "uncertain about the application of that law to the issues at hand," *Eli Lilly, supra* at 878, and certified the following questions to this Court:

"1. Under Indiana insurance contract law, should the types of extrinsic evidence proffered by the insurers be considered in the interpretation of the disputed 'trigger' provisions?

"2. If any aspect of the insurers' extrinsic evidence should be considered, would Indiana courts require a determination of the parties' actual intent concerning the application of the 'trigger' provision to delayed manifestation injuries? Or would Indiana courts permit a determination, after consideration of the extrinsic evidence, that the parties did not hold or convey a clear understanding of the trigger provision's applicability to delayed manifestation injuries and that, thus, the provision must be interpreted by the court as a matter of Indiana insurance law?

"3. If the insurers' extrinsic evidence should not be considered, or if that evidence is not determinative of the parties' intent, how should the insurance policy provision at issue be interpreted under Indiana law? In other words, would Indiana courts adopt an exposure, a manifestation, a multiple trigger, or some other interpretation of the 'injury'/'occurrence' language in Eli Lilly's policies?" *Id.* at 884–85.

The insurance policies at issue are "manuscript" policies written specifically for Lilly. The provision in each of the policies providing for liability coverage is, however, identical in all material respects to the coverage provision in the insurance industry's Comprehensive General Liability Policy (CGL). The CGL is a standard form policy for liability coverage adopted by the insurance industry in the 1960's to address the problem of insidious diseases which manifest after initial exposure to the substance believed to cause them.

The relevant clause in the majority of Lilly's policies defined coverage in terms of an "injury" that "occurs" during the policy period. Specifically, those policies provided that:

"[u]nderwriters hereby agree, subject to the limitations, terms and conditions hereafter mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay ... for damages, direct or consequential, and expenses, all as more fully defined by the term 'ultimate net loss,' on account of

"(i) personal injuries, including death at any time resulting therefrom, ... caused by or arising out of each occurrence anywhere in the world."

Thus the majority of Lilly's policies did not definitely state when an injury occurs in cases of insidious diseases. The parties do not contend that the relevant language in the remaining policies is significantly different.

As noted by the Court of Appeals, the policies did not define the relevant terms with precision. *Eli Lilly, supra* at 879. "Personal injury" was defined in part as "bodily injury, mental injury, mental anguish." "Occurrence" was defined as "an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury ... during the policy period." The Court of Appeals has defined its task to be interpreting those terms with respect to claims arising from DES-related illnesses, the determinative question

being when the DES-related "injury" "occurs" for purposes of the policies. *Id.* at 879–80.

The first question is whether under Indiana law the insurers' extrinsic evidence should be used to interpret Lilly's policies. The District Court determined that the evidence was not necessary to its construction of the policy language. The court determined that in cases where the contract is one for insurance, Indiana courts will employ the basic principles governing the interpretation of insurance policies to give effect to the parties' reasonable expectations rather than conduct a searching inquiry into extrinsic evidence.

The insurers dispute the District Court's interpretation and argue that, under Indiana contract and insurance law, their proffered evidence should be considered. They contend the extrinsic evidence "is relevant to (1) the parties' intent in adopting the policies, (2) the parties' course of conduct in applying the policies, (3) Eli Lilly's sophistication and strength as a bargaining partner, and (4) the medical nature of DES-related illnesses." *Id.* at 881.

 Generally, in Indiana, contracts for insurance are subject to the same rules of interpretation as are other contracts. *Asbury v. Indiana Union Mutual Insurance Co.* (1982), Ind.App., 441 N.E.2d 232; *American Economy Insurance Co. v. Liggett* (1981), Ind.App., 426 N.E.2d 136. If the policy language is clear and unambiguous, it should be given its plain and ordinary meaning. *Spears v. Jackson* (1980), Ind.App., 398 N.E.2d 718; *Vernon Fire and Casualty Insurance Co. v. American Underwriters, Inc.* (1976), 171 Ind.App. 309, 356 N.E.2d 693. In order to apply the rules of construction favoring the nondrafter of insurance contract terms, the language must be ambiguous or of doubtful meaning. *Spears, supra.*

 In determining when the DES-related "injury" "occurs" for purposes of the policies, at least two possible time considerations, exposure and manifestation, are relevant. *Eli Lilly, supra* at 880. Under Indiana law, an insurance policy is ambiguous if reasonable persons may honestly differ as to the meaning of the policy language. *Benefit Trust Life Insurance Co. v. Waggoner* (1985), Ind.App., 473 N.E.2d 646; *Huntington Mutual Insurance Co. v. Walker* (1979), 181 Ind.App. 618, 392 N.E.2d 1182. The language in Lilly's policies concerning what must happen during a particular policy period to trigger coverage for that period is ambiguous so as to be susceptible of more than one meaning.

 The terms of an insurance policy should be interpreted most favorable to the insured if there is an ambiguity in the policy. *Miller v. Dilts* (1984), Ind., 463 N.E.2d 257; *State Security Life Insurance Co. v. Kintner* (1962), 243 Ind. 331, 185 N.E.2d 527. An ambiguous insurance policy should be construed to further the policy's basic purpose of indemnity. *Masonic Accident Insurance Co. v. Jackson* (1929), 200 Ind. 472, 164 N.E. 628; *American Economy, supra.*

 In *Keene,* the court explicitly based its interpretation of the CGL-type policies on Keene's reasonable expectations on the basis of the policies' language. *Keene, supra* at 1042 n. 12. In the instant case, based on the relevant policy language, Lilly could have reasonably formed an expectation that it was purchasing insurance coverage for all future liability arising from the manufacturing and selling of DES. *See United Farm Bureau Mutual Insurance Co. v. Brantley* (1978), 176 Ind.App., 178, 375 N.E.2d 235.

Ambiguous insurance policy language should be interpreted to further the policy's purpose of indemnity. The language should be strictly construed against the insurer. *Miller, supra; State Security, supra.* This objective of promoting coverage leads us to the conclusion that consideration of the extrinsic evidence is unnecessary to interpretation of the policies. We therefore hold that under Indiana insurance law the insurers' proffered evidence would not be considered.

Our disposition on that question obviates the need to answer the second certified question. We would note that the construction of the ambiguous policy language should be resolved by the court as a matter of law. *See, e.g., Ohio Casualty Insurance Co. v. Ramsey* (1982), Ind.App., 439 N.E.2d 1162; *Huntington, supra.*

We now address the question of how the insurance policy provision at issue should be interpreted under Indiana law. As correctly noted by both federal courts in the instant case, no Indiana state court or federal court applying Indiana law has interpreted the policy language in the delayed manifestation context.

In the context of asbestos-related illnesses, the courts are divided in their interpretation of CGL-type policy provisions to determine the trigger of coverage. Some courts have adopted an exposure theory. *Porter v. American Optical Corp.* (5th Cir.1981), 641 F.2d 1128, *cert. denied,* 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650; *Insurance Co. of North America v. Forty-Eight Insulations, Inc.* (6th Cir.1980), 633 F.2d 1212, *cert. denied* (1981), 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650. At least one court has adopted a manifestation theory. *Eagle-Picher Industries, Inc. v. Liberty Mutual Insurance Co.* (1st Cir. 1982), 682 F.2d 12, *cert. denied* (1983), 460 U.S. 1028, 103 S.Ct. 1279, 75 L.Ed.2d 500. The *Keene* multiple trigger approach has been adopted by the Third Circuit, following the multiple trigger approach of lower Pennsylvania courts. *ACandS, Inc. v. Aetna Casualty and Surety Co.* (3rd Cir. 1985), 764 F.2d 968. *See Vale Chemical Co. v. Hartford Accident and Indemnity Co.* (1985), 340 Pa.Super. 510, 490 A.2d 896.

Under the multiple trigger theory, each insurer on the risk between the ingestion of DES and the manifestation of a DES-related illness is liable to the insured for indemnification. *See Keene, supra* at 1047.

In order to achieve the objectives in Indiana law, of giving effect to the policies' dominant purpose of indemnity, we hold that coverage is triggered at any point between ingestion of DES and the manifestation of a DES-related disease. This holding comports with the rule of interpretation that the courts should strive to give effect to the reasonable expectations of the insured. We therefore adopt the multiple trigger interpretation of the "injury"/"occurrence" language in Lilly's policies.

This cause is remanded to the United States Court of Appeals for the District of Columbia Circuit for further proceedings.

DeBRULER, PRENTICE and PIVARNIK, JJ., concur.

HUNTER and SHEPARD, JJ., not participating.