**Margaret Sterling PERDUE, Appellant–Defendant,**

v.

**AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC., International Claim Service Corp., AIG Life Insurance Company, National Union Fire Insurance Company of Pittsburgh, Pa., and American International Adjustment Co., Inc. Appellees–Defendants,**

Pedro Enterprises, Inc., and Dale Perdue, Personal Administrator of the Estate of Doran E. Perdue, and David A. Perdue, Dale E. Perdue, an individual, Debra R. Zisla, Doran E. Perdue, Jr. and Mary B. Perdue, Appellees–Plaintiffs.

No. 82A01–9206–CV–190.

Court of Appeals of Indiana, First District.

March 3, 1993.

Rehearing Denied April 27, 1993.

Jeffrey B. Kolb, Emison Doolittle Kolb & Roellgen, Vincennes, for appellant.

Terry Noffsinger, Noffsinger, Price, Bradley & Shively, Evansville, for appellees.

ROBERTSON, Judge.

Margaret Sterling Perdue appeals from the grant of partial summary judgment in favor of Pedro Enterprises, Inc., and Dale E. Perdue, Personal Representative of the Estate of Doran E. Perdue, et al. (the Estate), in the Estate's suit to recover proceeds paid to Margaret as the primary beneficiary of a life insurance policy. We need address only the following, restated allegation of error:

> Whether the antenuptial agreement applies to the life insurance proceeds paid to Margaret Perdue where Margaret Perdue was designated in writing as the beneficiary of the life insurance proceeds.

We reverse.

The following recitations of fact, taken from the judgment of the trial court, are undisputed by the parties:

1. Pedro Enterprises, Inc. ("Pedro") is an Indiana corporation, and prior to February 28, 1989, Pedro was wholly owned by Doran E. Perdue, who was also President of the Corporation. Doran E. Perdue died on February 28, 1989. Pursuant to the terms of the Last Will and Testament of Doran E. Perdue, submitted to probate on or about April 14, 1989, Doran left his entire interest in Pedro to the Perdue children.

2. Doran E. Perdue had been married to Ruth M. Perdue for over thirty (30) years. They were divorced December 26, 1985. Doran and Ruth had five (5) children.

3. On or about February 5, 1986, Doran E. Perdue and Margaret Sterling Perdue executed an Antenuptial Agreement, a copy of which was attached to the Complaint as Exhibit B. Margaret Perdue and Doran Perdue made disclosures to each other at the time of the execution of the Antenuptial Agreement, said disclosures being attached as Exhibit A to the Plaintiff's Motion for Summary Judgment and Exhibit B to the Plaintiff's Motion for Summary Judgment.

4. Pedro participated in an American Express program of obtaining corporation credit cards for its officers.

5. On or about February 22, 1989, Doran Perdue rented a car from Alamo Rent-A-Car ("Alamo"), by using the American Express credit card and waiving coverage by Alamo.

6. While driving the car rented from Alamo, Doran Perdue was involved in an automobile accident which resulted in his death. The accident was not caused by any fault of Doran Perdue.

7. As a result of the death of Doran Perdue, Margaret Perdue made a claim for, and received Two Hundred Thousand Dollars ($200,000) in insurance proceeds based upon the coverage provided by the use of the American Express credit card.

8. Doran Perdue was the sole owner/shareholder of Pedro.

9. The Antenuptial Agreement recited that it was the mutual intention of Doran E. Perdue and Margaret Sterling Perdue to forever establish their rights and interests with respect to their property and to the property and assets of the other in the event of the death of either party.

10. The primary purpose of the Antenuptial Agreement was to strictly limit, if not eliminate, the right of either spouse to participate in, or benefit from, the separate estate of the other. Article II, Paragraph 2.1 of the Agreement defines "Separate Estate" broadly and includes:

"... insurance proceeds and other assets [not just probate assets] which devolve or arise (directly or indirectly) from or through any of such assets owner [sic] by such other party at this time."

[Bracketed words added]

11. At all times relevant, Doran Perdue's "Separate Estate" included his corporate (Pedro) interest or asset, as well as all assets devolving or arising (directly or indirectly) from or through his corporation interests or assets.

12. In this case, his "Separate Estate" would include life insurance proceeds devolving or arising (directly or indirectly) from or through his corporate or individual interests or assets.

13. The source of the life insurance proceeds was the corporation which was owned by Doran as the sole owner or sole shareholder of the Corporation.

The antenuptial agreement contains the following provisions germane to this appeal:

The term "Separate Estate" means, as to each of the parties, the aggregate assets (including real property, personal property, rights in property and vested or contingent interests in property whether choate or inchoate) which each of the respective parties has at the time of this Agreement, together with all subsequent replacements of such assets and together with all funds, earnings, interest, dividends, appreciation, products, proceeds, insurance proceeds and other assets which devolve or arise (directly or indirectly) from or through any of such assets owned by such party at this time. Such replacements, funds, earnings, interest, dividends, appreciation, products, proceeds, insurance proceeds and other assets shall include, but not be limited to assets which arise (directly or indirectly) as a result of the investment of any such assets or as a result of any transaction with respect to any such assets. If either of the parties receives assets from the other party (whether by gift or pursuant to an obligation under this Agreement) then the receiving party shall thereafter hold such assets so received as a part of his or her separate estate.

\* \* \* \* \* \*

The Separate Estate of each party shall be and remain under the ownership, power, use and control of such party to the same extent as if he or she were unmarried, subject only to specific provisions in this Agreement to the contrary. Nothing in this agreement shall be construed to be a bar to either party from giving, bequeathing or devising any part of his or her Separate Estate to the other party or to any third party or parties whatsoever, whether by *inter vivos* gift or otherwise; provided, however, that such gift, bequest, or devise shall in all cases be in writing unless this Agreement is either modified so as not to require such a writing or is completely revoked.

With regard to these antenuptial provisions, the trial court stated:

The agreement evidences an intent that future transfers of property rights or interests by one party to the other party (directly or indirectly) would be by *active* conduct.

\* \* \* \* \* \*

In this instance, Margaret waived benefits realized (or to be realized) by virtue of her status as surviving spouse, absent some other writing by Doran Perdue evidencing his intention to the contrary.

\* \* \* \* \* \*

There is no writing *by Doran* designating Margaret as beneficiary of the life insurance benefits in question. The relevant writing was that of American Express. The writing of American Express, not Doran, designated the beneficiary to be the "surviving spouse."

\* \* \* \* \* \*

The Antenuptial Agreement effectively waived Margaret's entitlement to the insurance proceeds.

 Generally, in Indiana, contracts for insurance are subject to the same rules of interpretation as are other contracts. *Eli Lilly and Co. v. Home Ins. Co.* (1985), Ind., 482 N.E.2d 467, 470, *cert. denied*, (1987), 479 U.S. 1060, 107 S.Ct. 940, 93 L.Ed.2d 991. In addition, antenuptial agreements are to be construed according to principles applicable to the construction of contracts generally. *Rose v. Rose* (1988), Ind.App., 526 N.E.2d 231, 236, *trans. denied.* If the language is clear and unambiguous, it should be given its plain

and ordinary meaning. *Eli Lilly*, 482 N.E.2d at 470. The antenuptial agreement clearly states that nothing barred Doran from giving any part of his own Separate Estate to Margaret provided that such gift "shall in all cases be in writing." Here the insurance policy, the means through which Doran effected his purpose, was in writing. This is without dispute. The trial court, however, determined that the writing had to have been accomplished by active conduct on the part of Doran.

■ Where the terms of a contract are not ambiguous, the meaning of that contract is a matter for the court to decide as a matter of law. *Moore Heating v. Huber, Hunt & Nichols* (1991), Ind.App., 583 N.E.2d 142, 146. Thus, summary judgment is particularly appropriate in contract disputes. *Id.*

■ We conclude that the antenuptial agreement is clear and unambiguous on the issue Margaret raises. Doran clearly must have manifested the intent to give the property to Margaret, but the agreement does not require that he have composed the writing himself. The agreement probably required a writing in order to prevent fraud or perjury. Margaret could not have committed fraud against the estate with regard to the insurance proceeds under the circumstances here because Doran, on his own accord, purchased the insurance policy, which is in writing.

■ The primary beneficiary of the policy is the Card Member's widow or widower, in this case Margaret Perdue. The policy does not permit the Card Member, Doran Perdue, to change the beneficiary.

Where no power of disposition is reserved in the insured in the ordinary life insurance policy, the beneficiary, upon the issuance and acceptance of the policy, acquires a vested right, which cannot be impaired without the beneficiary's consent. Where, however, by the terms of the policy the right is reserved to the assured to change the beneficiary at will, then the original beneficiary acquires no vested interest in the policy, and has but a mere expectancy until after the death of the assured.

*Wolf v. Wolf* (1970), 147 Ind.App. 240, 259 N.E.2d 93 (quoting *Burnett v. Mutual Life Ins. Co.* (1916), 66 Ind.App. 280, 288, 114 N.E. 232, 234–235, *trans. denied*). Inasmuch as Doran Perdue had no power of disposition reserved in the policy, that is, could not change the primary beneficiary from his spouse, Margaret, to someone else, Margaret acquired a vested right in the policy upon issuance and acceptance.

Policies of insurance payable to designated beneficiaries are not the property of the decedent within the meaning of the statutes of distribution. The beneficiaries have the exclusive right to the money realized; the executor or the administrator is not entitled to it, and it can not, therefore, be regarded as the property of a decedent subject to distribution under the statute. In truth, the policy is not the property of the insured in any sense, but it is the property of the beneficiary from the day of its issue, for from that time he has the whole beneficial interest.

*Wilburn v. Wilburn* (1882), 83 Ind. 55, 56 (citing *Pence v. Makepeace* (1879), 65 Ind. 345). *See also, Damron v. Penn Mutual Life Insurance Company* (1884), 99 Ind. 478.

Margaret had a vested right in the policy because Doran could not change the beneficiary, and that vested interest was her personal property. Moreover, because she received this asset from Doran, she thereafter held it as a part of her separate estate.

Judgment reversed.

NAJAM and FRIEDLANDER, JJ., concur.