R.W. LINDER, Julie Linder Foster, and Marcia L. Lustig, Appellants–Plaintiffs,

v.

TICOR TITLE INSURANCE COMPANY OF CALIFORNIA, INC., Appellee–Defendant.

No. 29A04–9405–CV–200.

Court of Appeals of Indiana, Fourth District.

Feb. 28, 1995.

J. David Hollingsworth, Hollingsworth & Meek, Indianapolis, for appellants.

Bruce M. Pennamped, Lowe Gray Steele & Hoffman, Indianapolis, for appellee.

## OPINION

CHEZEM, Judge.

### Case Summary

Appellants-plaintiffs, R.W. Linder, Julie Linder Foster, and Marcia L. Lustig (collectively "Linder"), appeal the trial court's judgment on their breach of contract claim against appellee-defendant, Ticor Title Insurance Company ("Ticor"). We affirm in part and reverse and remand in part.

### Issues

Linder raises two issues for review:

I.  Whether the trial court used the proper measure of damages; and

II.  Whether Linder was entitled to specific costs in the action.

### Facts and Procedural History

On June 26, 1984, Linder purchased a parcel of real estate which bordered Allisonville Road and 106th Street in southern Hamilton County. As part of the transaction, Linder obtained from Ticor a policy of title insurance with a face amount of $72,500.00. Unbeknownst to either Linder or Ticor, the parcel was encumbered by an easement that had been granted to the predecessor in interest of Buckeye Pipeline Company and Marathon Oil Company. The easement encumbered the entire parcel, and granted to Buckeye and Marathon:

the right-of-way to lay, maintain, operate, replace and remove a pipeline and erect, maintain and remove telegraph or telephone lines.

The easement also reserved to Linder:

the right to fully use and enjoy the said premises, except for the purposes hereinbefore granted.

The policy of title insurance issued by Ticor did not list the easement as an exception to coverage.

In August of 1988, Buckeye removed trees, brush, and undergrowth from a 50-foot strip of land parallel to Allisonville Road for a distance of 984 feet along the west edge of Linder's property. This was the first notice that Linder had that there was an easement covering his property. To verify the existence of the easement, Linder hired Schneider Engineering to research the recorded documents. Upon verification that the easement existed, Linder hired Mervyn Posner to conduct an appraisal of the land as affected. Posner opined that the loss to the property was equal to fifty-percent of its value.

Linder filed a complaint against Ticor on April 25, 1991, for breach of contract. On July 17, 1992, Ticor filed a third-party complaint against Buckeye and Marathon seeking a judgment reducing and restricting the easement.

On December 21, 1993, the day of trial, an instrument was recorded in the Hamilton County Recorder's Office which reduced the easement to a strip fifty feet in width centered over the pipeline and running the length of Linder's property along Allisonville Road. After the trial, the court found that Ticor had breached the contract of title insurance, and that the damage to Linder's property by the easement as restricted amounted to $1,800.00. Linder appeals.

### Discussion and Decision

#### I. Measure of Damages

Linder argues that the trial court improperly measured the damage to the property. Specifically, Linder contends that his damages should have amounted to fifty-percent of the value of the property when he pur-

chased it, plus the time-value of that sum up until the date of trial. Ticor contends that the trial court correctly determined the amount of damages due Linder.

The relevant provisions of the policy provided:

### Policy of Title Insurance

Ticor Title Insurance Company [ ] insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the amount of insurance stated in Schedule A, and costs, attorneys' fees and expenses which the Company may become obligated to pay hereunder, sustained or incurred by the insured by reason of:

    2. Any defect in or lien or encumbrance on such title;

    \*    \*    \*    \*    \*    \*

### Conditions and Stipulations

**6. Determination and Payment of Loss**

(a) The liability of the Company under this policy shall in no case exceed the least of:

    (i) the actual loss of the insured claimant; or

    (ii) the amount of insurance stated in Schedule A.

Record at 112–117.

■ Insurance contracts are subject to the same rules of construction and interpretation as other contracts. *Eli Lilly and Co. v. Home Ins. Co.* (1985), Ind., 482 N.E.2d 467. When interpreting an insurance policy, the court's goal is to ascertain and enforce the parties' intent as manifested in the insurance contract. *American Family Mut. Ins. Co. v. National Ins. Ass'n* (1991), Ind.App., 577 N.E.2d 969, *reh. denied.* If the language of the policy is clear and unambiguous, it must be given its plain and ordinary meaning. *Eli Lilly, supra.*

■ If the language of the policy is ambiguous, though, the policy should be construed in favor of the insured to further the policy's basic purpose of indemnity. *Id.* An ambiguity exists if the policy is susceptible to more than one interpretation and reasonably intelligent persons would honestly differ as to its meaning. *Property Owners Ins. Co. v. Hack* (1990), Ind.App., 559 N.E.2d 396. An ambiguity does not exist simply because a

controversy exists between the parties, each favoring an interpretation contrary to the other. *Landis v. American Interinsurance Exch.* (1989), Ind.App., 542 N.E.2d 1351, *trans. dismissed.*

The evidence introduced at trial by both parties was that the existence of an easement reduced the value of the affected property by fifty-percent. The trial court found that Linder's loss was a partial loss and that the measure of damages was the difference between the value of the property with the defect and the value of the property without the defect. The trial court found that the loss to Linder was based on the easement as restricted, not on the easement as it existed when the property was purchased.

■ We hold that the trial court properly measured damages. Section 6 of the policy limits the amount of damages to the lesser of either the face value of the policy or the actual loss to the claimant. Here, Linder's actual loss was not fifty-percent of the value of the property as encumbered by the unrestricted easement. Linder's actual loss is the diminution in value of the property caused by the easement as restricted because it is only the continued existence of the restricted easement that affects Linder's property.

■ Along this same argument, Linder also contends that the policy does not allow for a computation of damages for a partial loss to the property. Linder argues that the policy provides that in the event of a breach, Ticor's only option is to remove the defect entirely or pay the face value of the property. Here, because Ticor simply reduced the encumbrance, but did not eliminate it, Linder contends he was entitled to the entire policy value. Linder cites that part of the policy which states:

**7. Limitation of Liability**

No claim shall arise or be maintainable under this policy

    (a) if the Company, after having received notice of an alleged defect, lien or encumbrance insured against hereunder, by litigation or otherwise, removes such defect, lien or encumbrance or estab-

lishes the title, as insured, within a reasonable time after receipt of such notice.

We do not agree with Linder that this provision requires Ticor to pay the face amount of the policy if it cannot remove the encumbrance entirely. The title of this section is instructive as to its scope; the provision sets out a limitation of Ticor's liability under the policy. The provision states that there shall be no claim under the policy if Ticor removes the title defect within a reasonable time after notice of its existence. Conversely, if the defect is not removed then a claim is maintainable under the policy. The provision has the effect of limiting claims under the policy only as to those defects that cannot be removed within a reasonable time.

As the encumbrance here was not removed, Linder is correct that he had a claim under the policy. It does not follow, however, that Linder is entitled to the full amount of the policy simply because the defect was not entirely removed and he therefore did not receive title to the extent insured by the policy. The purpose of title insurance is to insure that title to the property is vested in the named insured, subject to the exceptions and exclusions stated in the policy. Here, Linder bought a policy that insured that he had title, subject to certain exceptions. Because the policy did not except the easement in favor of Buckeye and Marathon, Linder had a claim thereunder. Linder's claim, however, was simply for the extent of his actual loss.

■ We note that while the trial court used the proper measure of damages, the trial court did not properly determine damages in this case. The trial court found that a portion of the easement as restricted lay substantially within a 100–foot setback restriction and the right-of-way to Allisonville Road. The trial court then excluded this portion of the easement from its determination in measuring damages, finding that such portion was not, nor had it ever been, subject to development by Linder. We disagree that the existence of the building setback restriction and right-of-way mitigated the damage caused by the easement. The restrictions imposed by the building setback and right-of-way are not the same as those imposed by

the easement; they are, in fact, less. The easement restricts Linder's use of the easement to those activities that do not interfere with Buckeye's or Marathon's right to lay, maintain, operate, replace, or remove the pipeline. In 1988, Buckeye, in furtherance of its right to maintain the pipeline, cleared a fifty-foot swath of trees, brush, and undergrowth along the easement. It is this action that put Linder on notice of the easement's existence, it has not been argued that this action was outside the scope of Buckeye's authority. However, Buckeye's right to maintain clear access to the pipeline has substantially interfered with Linder's desire to keep his land heavy with growth. Conversely, the existence of the building line setback and right-of-way do not impose any such similar restrictions. They restrict only Linder's ability to build structures on those portions of the land. Other than that, Linder was free to keep and maintain the area encompassed by the building set back and right-of-way in any manner he chooses.

Therefore, the restrictions imposed by the easement were not co-extensive with the restrictions imposed by the building setback or right-of-way. In terms of damages, the building setback and the right-of-way did not diminish the valve of Linder's property to the same extent as the easement. We therefore reverse the trial court's damage award and remand for a computation of damages based on the entire area of the restricted easement.

## II. Costs

Linder argues that the trial court erred in not awarding him expert witness fees of $1,950.00 incurred for Mervyn Posner's testimony, and a fee of $80.00 Linder had paid to Schneider Engineering for conducting a title search. We disagree.

■ Courts have no inherent power to assess or award costs to a prevailing party. *Calhoun v. Hammond* (1976), 169 Ind.App. 39, 345 N.E.2d 859. The right to recover costs is a matter left entirely to the legislature, and expert witness fees may not be taxed as costs in excess of the amounts prescribed by statute. *Id.* Indiana Code § 33–19–1–6 provides that witness fees in civil actions are limited to mileage paid at the

state rate plus five dollars for each day of attendance in court. The trial court was correct in not awarding the costs sought by Linder.

Affirmed in part, reversed and remanded in part.

SHARPNACK, C.J., concurs.

RILEY, J., dissents with separate opinion.

RILEY, Judge, concurring in part and dissenting in part.

I respectfully concur in part and dissent in part. I agree with the majority's opinion that the trial court used the proper measure of damages. I do not agree with the method used by the majority on how to determine the amount of damages in this case. I would affirm the trial court's judgment in all respects.