RIPPLE, Circuit Judge.
 

 National Fire & Casualty Company (“National Fire”) issued to the Town of Frankton, Indiana (“Frankton”) a Local Government General Liability insurance policy. Under the policy, National Fire agreed to defend and indemnify Frankton and its employees for Bodily Injury Liability and Personal Injury Liability, subject to a number of exclusions. Officer James Bradley Waymire, a Frankton police officer, engaged in a course of conduct with Mary Amanda West, a minor, that led to his pleading guilty to five felony counts of child molestation. Ms. West, through her parent, brought a § 1983 action against the town and Officer Waymire for these incidents. National Fire then instituted this diversity action seeking a declaratory judgment that it need not indemnify or defend Officer Waymire for his actions because they fall within the policy’s exclusions. For the reasons that follow, we affirm the judgment of the district court.
 

 I
 

 BACKGROUND
 

 A.
 
 Facts
 

 1.
 

 Officer Waymire was hired by the Frank-ton Police Department on April 10, 1991. Over the course of eighteen months, Officer Waymire engaged in criminal conduct with respect to Ms. West that led to the officer’s pleading guilty to five counts of felony child molestation. Several, although not all, of these events took place during the policy period.
 
 [1]
 

 On September 1, 1994, Ms. West filed suit under 42 U.S.C. § 1983 in district court, alleging that Officer Waymire, the Town of Frankton and the Frankton Police Depart
 
 *-1051
 
 ment had violated her constitutional and civil rights. She also alleged that Frankton and the Frankton Police Department negligently had hired and employed Officer Waymire and that Officer Waymire intentionally had committed the torts of assault and battery, invasion of privacy, and intentional infliction of emotional distress, for which Frankton was also liable under the theory of responde-at superior.
 

 2.
 

 Frankton purchased from National Fire a Local Government General Liability Policy (“LGGL Policy”) under which National Fire agreed to provide coverage for Frankton and its employees
 
 [2]
 
 for Bodily Injury Liability and Personal Injury Liability. The policy at issue covered the period from October 1, 1992 to October 1, 1993 and provided coverage subject to a number of exclusions. Coverage A (Bodily Injury Liability) provides:
 

 The company will pay on behalf of the
 
 insured
 
 all sums which the
 
 insured
 
 shall become legally obligated to pay as damages because of
 

 A.
 
 Bodily Injury,
 
 including liability for
 
 bodily injury
 
 assumed by the
 
 insured
 
 under any
 
 defined contract,
 
 ... to which this insurance applies, caused by an
 
 occurrence
 
 which first occurs during the policy period. ...
 

 LGGL Policy at 2. “Occurrence” is defined by the policy as “an event, including continuous or repeated exposure to conditions, which results in bodily injury ... neither expected nor intended from the standpoint of the insured.”
 
 Id.
 
 at 10 (italics omitted).
 

 Coverage C (Personal Injury Liability) of the policy provides:
 

 The company will pay on behalf of the
 
 insured
 
 all sums which the
 
 insured
 
 shall become legally obligated to pay as
 
 damages
 
 because of injury (herein called
 
 “personal injury”)
 
 sustained by any person ... and arising out of one or more of the following offenses committed in the conduct of the
 
 named insured’s
 
 operations:
 

 (A) False arrest, false detention or false imprisonment....
 

 Id.
 
 at 6. There is an exclusionary provision that applies to Coverage C in its entirety: “This insurance does not apply ... to
 
 personal injury
 
 arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge of any insured_”
 
 Id.
 
 National Fire also issued an endorsement to Coverage C (Civil Rights and Assault and Battery Endorsement), which added coverage for damages incurred pursuant to 42 U.S.C. § 1983 due to personal injuries arising from the violation of constitutional or civil rights. This endorsement in turn contains an exclusion applicable only to the coverage added by the endorsement: The insurance provided by the civil rights endorsement to Coverage C “shall not apply to ... [fraudulent, criminal or malicious acts.” R.17, Ex.B.
 

 B.
 
 District Court Proceedings
 

 On October 3, 1994, National Fire instituted the present declaratory judgment action against Officer Waymire and Ms. West. It sought a declaration that National Fire did not have the duty to defend or indemnify Officer Waymire for his actions.
 
 [3]
 
 Officer Waymire was served in this suit, but failed to enter an appearance. On June 5, 1995, National Fire filed a motion for summary judgment, which the district court granted on April 2,1996.
 

 The district court noted that the effective period of the policy, October 1, 1992 through October 1, 1993, excluded the events that occurred between the officer and Ms. West in May or June of 1992. In considering wheth
 
 *-1050
 
 er Officer Waymire’s actions during the effective time period were covered by the policy, the court considered separately the two Coverages, A and C, and concluded that his actions were not covered.
 

 Ms. West contended that the policy covered Waymire’s actions under Coverage A because it provided coverage for damages for bodily injuries caused by an “occurrence,” an event neither expected nor intended from the standpoint of the insured. Ms. West insisted that whether the injuries were intended or expected from the standpoint of the insured is a subjective inquiry and that because Officer Waymire allegedly did not intend to injure Ms. West (he allegedly thought the relations he had with Ms. West were consensual), her injuries were caused by an “occurrence.” Thus, according to Ms. West, National Fire would be obligated under Coverage A to defend and indemnify Officer Waymire. She further asserted that the “criminal act” exclusion to Coverage C was ambiguous and, if read to exclude Officer Waymire’s actions from coverage, would be void because it would render the coverage under the endorsement illusory.
 

 The district court rejected both of Ms. West’s submissions. It disagreed with Ms. West’s interpretation of the phrase “expected or intended” and concluded that, even under the most restrictive interpretation of these terms, the Supreme Court of Indiana would likely infer, as a matter of law, a subjective intent to injure in situations, like this one, “ ‘in which the insured has engaged in sexual misconduct with a minor.’ ” R.28 at 9 (quoting
 
 Wiseman v. Leming,
 
 574 N.E.2d 327, 329 (Ind.Ct.App.1991)). Accordingly, the court found that Officer Waymire’s actions were intended to cause Ms. West’s injuries and that Coverage A of the policy therefore does not cover such acts.
 

 The district court also rejected Ms. West’s second contention. Giving the policy exclusion its plain meaning, the court reasoned that the officer’s actions clearly would fall within the meaning of the phrase “criminal act.” Thus, Officer Waymire’s actions would be excluded from the § 1983 coverage. The court further held that the coverage, including this exclusion, was not illusory because it would provide coverage to the named insured and other insureds in a number of different situations.
 

 II
 

 DISCUSSION
 

 A.
 
 Standard of Review
 

 We review a district court’s decision to grant summary judgment de novo.
 
 Buckley Dement, Inc. v. Travelers Plan Adm’rs, Inc.,
 
 39 F.3d 784, 787 (7th Cir.1994) (citing
 
 Tolle v. Carroll Touch, Inc.,
 
 23 F.3d 174, 178 (7th Cir.1994)). “Summary judgment is proper only when ‘the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.’ ”
 
 Cox v. Acme Health Servs.,
 
 55 F.3d 1304, 1308 (7th Cir.1995) (quoting Fed.R.Civ.P. 56(c);
 
 Celotex Corp. v. Catrett, 471
 
 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). A fact is material only if it might affect the outcome of the case under the governing law.
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 248-49, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986). To determine whether summary judgment is appropriate, we view the evidence and draw all reasonable inferences therefrom in a light favorable to the non-moving party.
 
 Id.
 

 B.
 
 Policy Coverage
 

 1. Indiana Law
 

 In this diversity action, both parties agree that Indiana law governs our decision. Our duty then is to determine how this dispute would be resolved by the Supreme Court of Indiana.
 
 Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.,
 
 40 F.3d 146, 150 (7th Cir.1994);
 
 Fidelity & Guar. Ins. Underwriters, Inc. v. Everett I. Brown Co.,
 
 25 F.3d 484, 486 (7th Cir.1994).
 

 “Under Indiana law, the interpretation of an insurance policy presents a question of law to be decided by the court.”
 
 Cincinnati Ins. Co.,
 
 40 F.3d at 151 (citing
 
 Tate v. Secura Ins.,
 
 587 N.E.2d 665, 668
 
 *-1049
 
 (Ind.1992)). In a policy dispute, the insured has the burden of proving that the coverage applies, and the insurer, if relying on an exclusion to deny coverage, has the burden of demonstrating that the exclusion is applicable.
 
 Id.
 
 “Generally, in Indiana, contracts for insurance are subject to the same rules of interpretation as are other contracts.”
 
 Eli Lilly & Co. v. Home Ins. Co.,
 
 482 N.E.2d 467, 470 (Ind.1985). If the policy’s language is clear and unambiguous, it is to be given its plain and ordinary meaning.
 
 Id.
 
 (citing
 
 Spears v. Jackson,
 
 398 N.E.2d 718 (Ind.Ct. App.1980)). “An unambiguous provision in an insurance policy must be enforced, even if it results in a limitation of the insurer’s liability.”
 
 Cincinnati Ins. Co.,
 
 40 F.3d at 151. If, on the other hand, there is an ambiguity in the terms of an insurance policy, the terms should be construed both to favor the insured and to further indemnity.
 
 Eli Lilly,
 
 482 N.E.2d at 470 (citing
 
 Miller v. Dilts,
 
 463 N.E.2d 257, 265 (Ind.1984)). “In order to apply the rules of construction favoring the non-drafter of insurance contract terms, the language must be ambiguous or of doubtful meaning.”
 
 Id.; see also Southbend Escan Corp. v. Federal Ins. Co.,
 
 647 F.Supp. 962, 966 (N.D.Ind.1986) (“To constitute an ambiguity so as to be susceptible of more than one interpretation, it must be shown that reasonably intelligent men upon reading the insurance contract would honestly differ as to its meaning.”).
 

 “Tt is the underlying nature of the claim, not its merits, that establishes the insurer’s duty to defend.’”
 
 Terre Haute First Nat’l Bank v. Pacific Employers Ins. Co.,
 
 634 N.E.2d 1336, 1339 (Ind.Ct.App.1993) (quoting
 
 Trisler v. Indiana Ins. Co.,
 
 575 N.E.2d 1021, 1023 (Ind.Ct.App.1991)). However, “[t]he insurer may go beyond the face of the complaint and refuse to defend based upon the factual underpinnings of the claims against its insured.”
 
 Wayne Twp. Bd. of Sch. Comm’rs v. Indiana Ins. Co.,
 
 650 N.E.2d 1205, 1208 (Ind.Ct.App.1995);
 
 accord Terre Haute First Nat’l Bank,
 
 634 N.E.2d at 1339 (“[T]he insurer’s duty to defend is determined from the allegations of the complaint and from those facts known to or ascertainable by the insurer after reasonable investigation.”). “When the underlying factual basis of the complaint, even if proved true, would not result in liability under the insurance policy, the insurance company can properly refuse to defend.”
 
 Wayne Twp. Bd.,
 
 650 N.E.2d at 1208;
 
 see Transamerica Ins. Servs. v. Kopko,
 
 570 N.E.2d 1283, 1285 (Ind.1991) (“When the nature of the claim is obviously not covered by the policy of insurance, there is no duty to defend.”). “An insurer’s duty to defend its insureds against suit is broader than its coverage liability or duty to indemnify.”
 
 Terre Haute First Nat’l Bank,
 
 634 N.E.2d at 1339;
 
 accord Trisler,
 
 575 N.E.2d at 1023.
 

 2. Coverage A
 

 We agree with the district court that Ms. West has failed to show that Coverage A could apply to Officer Waymire’s actions. Ms. West contends that the insurer has a duty to defend and a potential duty to indemnify Officer Waymire under Coverage A of the policy because Officer Waymire’s actions constituted “occurrences” under the policy. Thus, she claims, the language of Coverage A — “the company will pay on behalf of the
 
 insured
 
 all sums which the
 
 insured
 
 shall become legally obligated to pay as damages ... caused by an
 
 occurrence”
 
 — would apply. The policy defines “occurrence” as “an event ... which results in
 
 bodily injury ...
 
 neither expected nor intended from the standpoint of the insured.” Ms. West asserts that the term “occurrence” is ambiguous because it is unclear whether the phrase “expected [ ]or intended - from the standpoint of the
 
 insured”
 
 incorporates an objective or a subjective standard. This ambiguous phrase then, according to Ms. West, must be read in the manner most favorable to the insured and thus be interpreted as setting a subjective standard. Ms. West further alleges that, from a subjective standpoint, Officer Way-mire did not intend or expect that his actions would cause Ms. West bodily injury; therefore Officer Waymire’s actions would be covered by Coverage A.
 

 We agree with Ms. West that, if we were to find the phrase “expected” or “intended” to be ambiguous, as some Indiana
 
 *-1048
 
 courts have done,
 
 [4]
 
 we would have to interpret the phrase in a manner most favorable to the insured and hold that the coverage in Coverage A turns on the subjective intent of the insured. But even were we to agree that the proper inquiry is generally a subjective one, the district court correctly determined that, as a matter of Indiana law, Officer Waymire intended or expected the injuries he caused Ms. West. This “intent to cause injury” may be established one of two ways: “by showing an actual intent to injure or by showing the nature and character of the act is such that intent to cause harm must be inferred as a matter of law.”
 
 Auto-Owners Ins. Co. v. Stroud,
 
 565 N.E.2d 1093, 1095 (Ind.Ct.App.1991).
 

 Accepting for purposes of summary judgment Ms. West’s allegation that Officer Way-mire did not possess the actual intent to injure her, we turn to the second method of determining whether the insured intended or expected the harm. Under Indiana law:
 

 [a] defendant’s acts of child molestation ..., which are proscribed by [Indiana] criminal statutes due to the heinous nature of such acts, are inherently harmful to the victim of the crime. Therefore, it can be inferred from these acts that the defendant intended to harm the victim. In so holding, ... the subjective intent of the defendant is irrelevant.
 

 Wiseman v. Leming,
 
 574 N.E.2d 327, 329 (Ind.Ct.App.1991);
 
 see Wayne Twp. Bd. of Sch. Comm’rs v. Indiana Ins. Co.,
 
 650 N.E.2d 1205, 1208 (Ind.Ct.App.1995) (noting in case of child molestation that Indiana law infers that defendant intended to injure the minor, regardless of subjective mental state). Because Indiana law infers, as a matter of law, that convicted child molesters intend the harm they cause to their victims, Officer Waymire’s actions clearly fall outside Coverage A provided by the policy. Ms. West’s injuries were not caused by an occurrence covered by Coverage A.
 
 [5]
 

 3. Coverage C
 

 a.
 

 We further agree with the district court that the exclusion to the Civil Rights and Assault and Battery endorsement to Coverage C precludes coverage for Officer Waymire’s actions. The endorsement amends Coverage C to include within the list of offenses for which the insurer will pay damages: “(D) Any violation of the Civil and Constitutional Rights of any person which creates a cause of action for
 
 damages
 
 by or on behalf of such person under ... United States Code, Title 42, Section 1983.” R.17, Ex.B. The endorsement also provides an additional exclusion that applies to subpart (D): “The insurance provided by subpart[] (D) ... of Coverage C shall not apply to: (1) Fraudulent, criminal or malicious acts.”
 
 Id.
 
 Courts have given the phrase “criminal act” in insurance policy exclusions its plain meaning.
 
 See Allstate Ins. Co. v. Brown,
 
 16 F.3d 222, 225 (7th Cir.1994) (“[A]n act is criminal if it violates the State’s criminal code.”);
 
 Allstate Ins. Co. v. Norris,
 
 795 F.Supp. 272, 275-76 (S.D.Ind.1992) (holding that, under the plain meaning of the “criminal act” exclusion, a Class C felony under Indiana law was not covered by the policy; collecting Indiana cases). Officer Waymire pleaded guilty to five counts of child molestation (felonies under the Indiana penal code), which constitute the core of Ms. West’s action. Therefore, National Fire would not have a duty to indemnify or defend Officer Waymire for his acts of child molestation because such acts
 
 *-1047
 
 clearly fall within the meaning of the exclusion.
 
 [6]
 

 b.
 

 Moreover, we note that, even absent the exclusion to the civil rights rider to the policy, the policy provides no coverage for Officer Waymire because his actions would be excluded by the “willful violation of a penal statute” exclusion, an exclusion that affects the scope of coverage for all of Coverage C, including the civil rights endorsement. Officer Waymire’s actions fall squarely within this coverage exclusion. Coverage C excludes from coverage “any personal injuries arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of any insured.” LGGL Policy at 6. The allegations relating to Officer Waymire’s conduct clearly speak of intentional acts that violated penal statutes.
 
 Cf Carney v. White,
 
 843 F.Supp. 462, 476 (E.D.Wis.1994) (finding that, under Wisconsin law, because the complaint alleged intentional conduct that violated penal statutes, the insurer was under no obligation to defend the insured officer),
 
 aff'd,
 
 60 F.3d 1273 (7th Cir.1995). The underlying conduct for which Ms. West seeks damages involves intentional acts of child molestation and false imprisonment. Both offenses clearly are prohibited by the Indiana penal code.
 
 See
 
 Ind.Code § 35-42-4-3 (child molestation); Ind.Code § 35-42-3-3 (criminal confinement).
 
 [7]
 
 Therefore, under the clear and unambiguous language of the policy, no coverage would apply to Officer Waymire’s actions.
 
 See Carney v. Village of Darien,
 
 60 F.3d 1273, 1280-81 (7th Cir.1995) (finding that identical policy language excluded coverage of officer’s actions in instance in which officer detained individuals and offered to void traffic citations in exchange for sexual favors; holding that insurer had no duty to defend officer).
 

 Conclusion
 

 We agree with the district court that Officer Waymire’s actions could not fall within the policy coverage under Coverage A and would be excluded from the coverage provided in Coverage C. Accordingly, we affirm the district court’s order declaring that National Fire had no duty to defend or indemnify Officer Waymire for his acts of child molestation.
 

 AFFIRMED.
 

 [1]
 

 . In August 1993, while on duty, Officer Way-mire encountered Ms. West and a friend walking together at 3:30 a.m. The officer asked the girls if they were heading home and then engaged in a sexually explicit conversation with the girls and fondled their breasts. In September 1993, Officer Waymire was summoned to Ms. West’s home; he told Ms. West’s mother that he would need to take Ms. West to the police station to perform a breathalyser test on her. Her mother acquiesced, and the officer and Ms. West went to the police station, where Officer Waymire sexually molested Ms. West in four separate ways. On October 8, 1994, Officer Waymire pled guilty to five counts of felony child molestation; this prosecution was based on these incidents as well as another incident that occurred outside the period of insurance coverage.
 

 [2]
 

 . The policy provides: "Each of the following is an
 
 insured
 
 under this insurance to the extent set forth below:
 

 (a) the
 
 named insured;
 

 (b) while acting within the scope of his duties as such:
 

 Any employee of the
 
 named insured;
 

 R.17, Ex.B, LGGL Policy [hereinafter "LGGL Policy”] at 2. The policy defines the “named insured” as “the political subdivision or other entity named in Item 1 of the declarations of this policy.”
 
 Id.
 
 at 10 (italics omitted). Here, the named insured is Frankton.
 

 [3]
 

 . National Fire continued to defend Frankton in Ms. West's underlying suit.
 

 [4]
 

 .
 
 See, e.g., Auto-Owners Ins. Co. v. Stroud,
 
 565 N.E.2d 1093, 1095 (Ind.Ct.App.1991);
 
 Indiana Farmers Mut. Ins. Co. v. Graham,
 
 537 N.E.2d 510, 511 (Ind.Ct.App.1989).
 
 But see State Farm Fire & Cas. Co. v. Miles,
 
 730 F.Supp. 1462, 1465 (S.D.Ind.1990) (finding that the phrase “expected or intended" in an insurance policy is not ambiguous),
 
 aff'd,
 
 930 F.2d 25 (7th Cir.1991).
 

 [5]
 

 . We cannot accept Ms. West’s contention that, because she also alleges that her injuries were caused by the officer's negligent performance of his duties, Wiseman and Wayne Township Board are inapplicable. Ms. West’s characterization of these actions of criminal child molestation as the negligent performance of duty cannot change the nature of the claim.
 
 See City of Jasper v. Employers Ins.,
 
 987 F.2d 453, 456-57 (7th Cir.1993). It is the nature of the complaint that controls.
 
 Transamerica Ins. Serv. v. Kopko,
 
 570 N.E.2d 1283, 1285 (Ind.1991). Here, the nature of the complaint involves the volitional acts of child molestation.
 

 [6]
 

 . The district court correctly rejected Ms. West's contention that this reading of the policy would render illusory any coverage under the endorsement. As the district court noted, this reading of the endorsement and the exclusion would provide coverage in a number of situations. Thus, the coverage provided is not illusory.
 
 See Fidelity & Guar. Ins. Underwriters, Inc. v. Everett I. Brown Co.,
 
 25 F.3d 484, 490 (7th Cir.1994) ("An insurance policy is considered illusory in Indiana only if a premium was paid for coverage which would not pay benefits under any reasonably expected set of circumstances.”) (internal quotations omitted);
 
 City of Lawrence v. Western World Ins. Co.,
 
 626 N.E.2d 477, 480 (Ind.Ct.App.1993) (holding coverage wgs not illusory in an instance in which court was "unable to say, from the language in the policy, that there [was] no risk for which coverage [was] provided.").
 

 [7]
 

 . Ms. West's complaint, in addition to alleging that Officer Waymire intentionally committed these actions, alleges that, by molesting her, he performed his duties as an officer in a negligent manner. As we have already noted, Ms. West cannot transform the policy coverage simply by recharacterizing Officer Waymire's intentional criminal acts as negligent.
 
 See supra
 
 note 5.