496 So.2d 201 (1986)
Daniel A. BAUM, Rose Baum and David Baum, Appellants,
v.
ALLSTATE INSURANCE COMPANY, Appellee.
No. 85-2088.
District Court of Appeal of Florida, Fourth District.
October 15, 1986.
*202 David Boone and James V. Dolan, Fort Lauderdale, for appellants.
James T. Sparkman of Hill, Neale and Riley, Fort Lauderdale, for appellee.
DOWNEY, Judge.
This is a timely appeal from a final judgment entered in favor of appellee, Allstate Insurance Company, and against appellants, Daniel A. Baum, Rose Baum and David Baum. Appellants contend that the trial court erred in finding that they made an informed rejection of uninsured motorist coverage as defined by Florida Statutes and case law.
Allstate issued a policy of automobile insurance, which included uninsured motorist (UM) coverage, for two automobiles owned by Daniel A. Baum, for the years 1979, 1980, 1981. Mr. Baum moved to Plantation, Florida, in 1981 and selected the Seifreit Agency, an Allstate agent, located in Plantation. According to Mr. Baum, he informed an employee at the Seifreit Agency that he wanted his New Jersey insurance transferred to Florida with the same coverage as he had in New Jersey. Allstate issued a renewal policy to Mr. Baum through the Florida regional office. On February 26, 1983, appellant David A. Baum, Mr. Baum's son, was involved in an accident with an uninsured motorist while driving the insured vehicle.
Appellants filed an action to compel arbitration pursuant to sections 682.03 and 682.04, Florida Statutes (1983), to determine the amount of damages David A. Baum was entitled to resulting from bodily injuries in the aforesaid automobile accident. A non-jury trial was held in this cause on March 12, 1985.
During the nonjury trial Daniel A. Baum testified that an employee of Seifreit agency provided him with several forms to sign; however, she did not explain to him that he was rejecting uninsured motorist's coverage. A UM rejection form signed by Mr. Baum was introduced into evidence, and Mr. Baum testified that it was his signature on the form.
The trial court subsequently entered a final judgment in favor of Allstate Insurance Company based on its finding that Mr. Baum had made an informed rejection of uninsured motorist coverage as defined by Florida Statutes and case law.
Section 627.727(1), Florida Statutes (1983), provides that uninsured motorist coverage shall be afforded to insureds under an automobile liability policy unless rejected by the insured. A rejection of uninsured motorist coverage must be knowingly made. Wilson v. National Indemnity Co., 302 So.2d 141 (Fla. 1st DCA 1974). See also Lancaster Oil Co. v. Hartford Acc. & Indem. Co., 486 F. Supp. 399 (N.D.Fla. 1980). An informed rejection requires that the insured know that he is entitled to UMI limits equal to the bodily injury limits of the policy. Lane v. Waste Management, Inc., 432 So.2d 70 (Fla. 4th DCA), rev. denied, 441 So.2d 633 (Fla. 1983).
Appellants contend that the record does not demonstrate that their rejection of uninsured motorist coverage was an informed rejection. They rely upon Zisook v. State Farm Mutual Auto. Ins. Co., 440 So.2d 452 (Fla. 3d DCA 1983), for the proposition that an informed rejection of uninsured motor vehicle coverage cannot, without extrinsic evidence, be implied from the insured's signature on the application for uninsured motor vehicle coverage.
Appellee, on the other hand, contends that the form furnished Baum prior to the renewal policy being issued unequivocally informed him of the availability of uninsured motorist coverage and described the options available to him. That form reproduced *203 in the margin[1] is as clear an explanation of the subject as we have heretofore seen. Thus, appellee relies upon Jackson v. State Farm Fire & Cas. Co., 469 So.2d 191 (Fla. 2d DCA 1985) wherein the court said:
Section 627.727(1) provides that uninsured motorist coverage shall be afforded to insureds under a motor vehicle liability policy but that an insured under such a policy does not have statutorily required uninsured motorist coverage when that coverage has been rejected in writing by the insured. Under this statutory plan we believe that an insurer, by presenting evidence of such a written rejection, prima facie establishes that no uninsured motorist coverage applies. Thereupon the burden of proof shifts to the insured to show that the rejection was not knowing. Accordingly, in this case Mrs. Jackson, by presenting no evidence to support her contentions, did not carry her burden of proof.
469 So.2d at 193. Baum admits his signature on the form in question; thus absent any convincing evidence precluding its effectiveness he is bound thereby.
We think the trial judge was eminently correct in his conclusion that Baum had made an informed rejection of the UMI coverage. This conclusion is supported by *204 our recent decision in Bankers Insurance Company v. Vasquez, 483 So.2d 440 (Fla. 4th DCA 1985) wherein the court said:
The language of this final paragraph, following its underlined premise, is unmistakable and unequivocal and it requires the insured's separate signature. It is a plainly worded rejection of UM coverage. If such a written rejection is not valid upon signature, one is left helpless to suggest how else an insurer can protect itself from providing coverage, for which it receives no premiums, unless the signature were to be sworn to acknowledging that the paragraph had been read and understood. In the case before us, the insured does not deny her signature, but explains that her rejection was not knowingly made because she was distracted by the simultaneous purchase of a motorcycle helmet, did not pay much attention, and is not sophisticated in insurance matters. None of these reasons appear to us to be supportable; otherwise, as a practical matter, every written rejection would be worthless in that it would be obviated by convenient oral testimony to fit the circumstances and the case law.
We must look to the purpose of the statute to find the answer. As the court in Kimbrell remarked, Section 627.727, Florida Statutes (1983), embodies a public policy for the protection of insureds so that UM coverage will be available under all automobile insurance policies unless rejected by the insured. 420 So.2d 1086 at 1088 [(Fla. 1982)]. It is obviously not intended that the insured is to always have UM coverage without paying for it, otherwise there would be no point in having a statutory provision outlining how to reject it. As the Kimbrell court also pointed out, that rejection is not mandated in any particular fashion and need not even be in writing. However, it must be knowing. Common sense dictates that the best and most common method of preventing a contracting party from excusing herself from being bound by claiming she did not know that she was rejecting UM coverage is to have her sign a clearly worded statement that she did reject it. It is axiomatic that absent unusual circumstances, not present under the facts of the case now before us, one cannot claim ignorance of the contents of a written instrument which one signs. Stonebraker v. Reliance Life Ins. Co. of Pittsburgh, 123 Fla. 244, 166 So. 583 (1936) and John Deere Industrial Equipment Co. v. Roberts, 362 So.2d 65 (Fla. 1st DCA 1978).
Our conclusion as to legislative intent is bolstered by a recent amendment to the statute in which the pertinent portion of Section 627.727(1) was amended to provide that the rejection of UM is to be made on a form "approved by the insurance commissioner." See Ch. 85-62, § 16, Laws of Fla. True, the language in the amended statute is not quite the same as the language of the rejection paragraph in the matter at bar. However, it is equally as clear. We note under the amendment that the insured's signature "conclusively presume[s] there was an informed knowing rejection."
Id. at 442.
Accordingly, we affirm the judgment appealed from.
HERSEY, C.J., and LETTS, J., concur.
NOTES
[1] MOTORIST PROTECTION
ELECTION OF COVERAGE AND LIMITS
OR
REJECTION OF UM COVERAGE
(FLORIDA)