GILBERT C. LIBRIZZI *et al.*, Plaintiffs-Appellants, v. STATE FARM FIRE AND CASUALTY COMPANY, Defendant-Appellee (William J. Hart, Indiv. and as Special Adm'r for the Estate of Sandra M. Hart, *et al.*, Defendants-Appellants).

First District (5th Division)   Nos. 1—91—3702, 1—91—3824, 1—91—3831, 1—91—4076 cons.

Opinion filed October 23, 1992.

John D. Lien, of Foley & Lardner, of Chicago, for appellants Gilbert C. Librizzi and Laverne J. Librizzi.

Michael Resis, of Querrey & Harrow, Ltd., of Chicago, for appellee.

JUSTICE MURRAY delivered the opinion of the court:

The plaintiffs filed this declaratory action seeking liability coverage under a personal liability umbrella policy issued to the plaintiff Gilbert C. Librizzi (Gilbert) by State Farm Fire and Casualty Company (State Farm Fire) for injuries arising out of a two-car accident that took place on September 1, 1988. On cross-motions for summary judgment the trial court denied the plaintiffs' summary judgment motion and found that the policy was not in effect on the date of the accident. The trial court granted State Farm Fire's motion for summary judgment.

The facts are as follows.

On September 1, 1988, Laverne J. Librizzi (Laverne) was driving a 1985 Oldsmobile Delta 88 in Wisconsin when she was involved in a collision with another automobile driven by William Martinson, Sr. At the time of the collision, Laverne's five sisters were passengers in the automobile she was driving. As a result of the collision, Sandra M. Hart, one sister, was killed; Marlene Mikolajczyk, another sister, was injured so seriously that she will in all likelihood require supervised care the remainder of her life; and a third sister, Thelma Aleck, was seriously injured. At the time of the collision William Martinson, Sr., had three passengers in his automobile. The three passengers, Kristine Martinson, William Martinson, Jr., and Brian Martinson, incurred personal injuries. Although the Martinson family filed an action against Laverne, that case was settled and dismissed as a result of

payments made by State Farm Mutual Automobile Company (State Farm Auto).

At the time of the accident on September 1, 1988, Gilbert owned and was the named insured of the 1985 Oldsmobile Delta with State Farm Auto under policy No. 8615—692—C18—13. The bodily injury limits of liability on policy No. 8615—692—C18—13 at all relevant times were $100,000 per person and $300,000 per accident.

On or about October 1982 Gilbert contacted the State Farm insurance agency with whom he had done business for 20 years to increase the amount of coverage on his motor vehicle liability policy and his homeowner's policy. The State Farm agent told Gilbert that the only way his existing coverage could be increased was for him to purchase a personal liability umbrella policy from State Farm Fire. Thereafter Gilbert procured and was the named insured on personal liability umbrella policy No. 13—864586 (umbrella policy) from State Farm Fire. This policy provided coverage for personal liability in the amount of $1 million.

On January 31, 1989, William J. Hart, individually and as special administrator for the estate of Sandra M. Hart, filed suit against Laverne in the circuit court of Cook County, Illinois, seeking recovery for wrongful death as a result of the collision on September 1, 1988, and that case is still pending. However, William Hart has entered into a written agreement with Laverne whereby Mr. Hart has accepted a settlement payment from State Farm Auto and has agreed to limit any future recovery to the proceeds of the personal liability umbrella policy issued by State Farm Fire.

On February 24, 1989, Marlene Mikolajczyk filed suit against Laverne in the circuit court of Cook County, Illinois, seeking recovery for personal injuries resulting from the collision on September 1, 1988. That case is still pending.

On April 3, 1990, Thelma Aleck filed suit against Laverne in the circuit court of Cook County, Illinois, seeking recovery for personal injuries resulting from the collision. Although that case is still pending, Thelma Aleck has entered into a written agreement with Laverne, whereby Thelma Aleck has accepted a settlement payment from State Farm Auto and has agreed to limit any future recovery to the proceeds of the personal liability umbrella policy issued by State Farm Fire.

State Farm Auto undertook to provide a defense for Laverne with respect to the above lawsuits pursuant to the terms of liability insurance policy No. 8615—692—C18—13. State Farm Fire, however, denied coverage under the personal umbrella liability policy No. 13—

864586, claiming the coverage was cancelled effective December 22, 1986, for nonpayment of the premium due in October 1986.

The plaintiffs thereafter filed a complaint for declaratory judgment against State Farm Fire and the claimants, seeking the court to declare that the umbrella policy issued by State Farm Fire was in full force and effect on September 1, 1988. State Farm Fire filed an answer and affirmative defense to the complaint for declaratory judgment. State Farm Fire asserted that on November 19, 1986, it sent a notice of cancellation of the umbrella policy to the plaintiffs, effective December 22, 1986, for nonpayment of premiums. A copy of a "Notice of Cancellation" was attached to the pleading. The notice indicates: policy No. 13—86—4586—7; "Date Cancelled Dec. 22, 1986"; "Date Processed Nov 19, 1986"; "Date Due Oct. 25, 1986"; and "Amount Due $273.00." State Farm Fire further asserted that on December 22, 1986, coverage under the umbrella policy was terminated and that no policy was in effect on September 1, 1988. The plaintiffs filed an answer to State Farm Fire's affirmative defenses in which they denied receiving this notice. The plaintiffs admitted that they failed to pay a premium, but denied any premium was due.

State Farm Fire first issued an umbrella policy to the plaintiff, Gilbert, in exchange for a $146 premium, effective for the 12-month period between October 25, 1982, and October 25, 1983, with liability limits of $1 million. As the plaintiffs admitted in their response to State Farm Fire's request to admit, the umbrella policy was renewed by the payment of an annual premium to State Farm Fire in October 1983, October 1984 and lastly in October 1985.

In its answers to interrogatories, Harold Henson, operation superintendent for State Farm, testified that approximately 45 days prior to the anniversary date of the policy a premium renewal notice was automatically generated by computer based on the information stored on the policy and other general instructions. The premium renewal notice was then placed in an envelope and taken to the post office for mailing to the address listed on the policy. The anniversary date of the policy was the premium due date and indicated in the premium renewal notice. Approximately 25 days following the anniversary date, a cancellation for nonpayment of the premium is printed by computer, placed in an envelope and taken to the post office for mailing to the address listed on the policy.

State Farm Fire claims that on or about November 19, 1986, it mailed a notice of cancellation for the umbrella policy to Gilbert at his home address, and that this notice stated the policy would be can-

celled December 22, 1986. The notice was allegedly on the computer produced form F1—162, as provided in the operation guide.

State Farm Fire admits that (1) it does not have a copy of the premium notice supposedly sent to Gilbert in 1986; (2) it does not have a printed list that would show cancellation; and (3) it does not have a proof of mailing of cancellation on a recognized United States post office form or on any form, all with respect to the umbrella policy.

In an affidavit, Gilbert denied receiving a premium notice or cancellation notice for the personal liability umbrella policy in 1986 or at any time leading up to the accident on September 1, 1988. Gilbert said that he first became aware that State Farm Fire allegedly cancelled his umbrella policy when he contacted his insurance agent in September 1988 to report the accident.

Gilbert also stated that the premium notices for his various State Farm policies came at different times of the year. In addition to the automobile policy insuring the vehicle involved in the accident with State Farm Auto, an entity separate from State Farm Fire, Gilbert also had in effect a homeowner's policy with State Farm Fire. The renewal notice for the automobile policy was on a six-month cycle between March 18 and September 18 each year. The renewal notice for the homeowner's policy was on a 12-month cycle for May 1 of each year. Each of these policies and notices bore the same mailing address for the plaintiffs as the umbrella policy.

The plaintiffs filed a motion for summary judgment and supporting memorandum of law. State Farm Fire filed a response to the plaintiffs' motion, a cross-motion for summary judgment and a supporting memorandum of law. The plaintiffs filed a reply in support of their own motion for summary judgment and a response in opposition to State Farm Fire's motion for summary judgment. State Farm Fire filed a reply in support of its summary judgment motion.

On October 29, 1991, after argument, the trial court denied the plaintiff's motion and granted State Farm Fire's cross-motion finding and declaring that State Farm Fire owed no duty to defend or indemnify the plaintiffs under the umbrella policy for the accident.

The plaintiffs, Gilbert and Laverne Librizzi, as well as defendants, Marlene Mikolajczyk, Thelma Aleck, and William J. Hart, individually and as special administrator for the estate of Sandra M. Hart, have all filed timely notices of appeal. A joint brief was submitted on behalf of all the appellants.

On appeal the appellants raise the following issues:

I. The plaintiffs' motion for summary judgment should have been granted and State Farm Fire's motion for summary judgment should have been denied;

II. Even if summary judgment could not be granted for plaintiffs, based upon State Farm Fire's failure to maintain proof of mailing of the cancellation notice on a United States post office form, summary judgment should not have been granted to State Farm Fire because there were disputed issues of material fact; and

III. The reason given by the lower court to grant State Farm Fire's motion for summary judgment, namely, that this was a case of "nonrenewal" rather than "cancellation" is wrong.

In response State Farm Fire argues that the trial court properly found that the umbrella policy was not in force at the time the accident took place on September 1, 1988, when the plaintiffs failed to make any payments to renew the policy before it lapsed on December 22, 1986.

A motion for summary judgment should only be granted where the pleadings, depositions, and admissions on file, together with the affidavits, if any, disclose that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(c); *Sons v. Taylor* (1991), 219 Ill. App. 3d 923, 925, 579 N.E.2d 1281; *Breeze v. Payne* (1989), 181 Ill. App. 3d 720, 726-27, 537 N.E.2d 453.) The court must construe the evidence strictly against the movant and liberally in favor of the opponent. (*Stringer v. Zacheis* (1982), 105 Ill. App. 3d 521, 522, 434 N.E.2d 50, 52.) When determining the existence of a material fact, the court must find such an issue supported by evidentiary facts revealed in the record. (*Riverton Area Fire Protection District v. Riverton Volunteer Fire Department* (1991), 208 Ill. App. 3d 944, 951, 566 N.E.2d 1015.) Construction of the terms of an insurance policy and satisfaction of statutory requirements are questions of law properly decided on a motion for summary judgment. *John Bader Lumber Co. v. Employers Insurance of Wausau* (1982), 110 Ill. App. 3d 247, 441 N.E.2d 1306.

The use of summary judgment is encouraged under Illinois law as an aid to the expeditious disposition of a lawsuit. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867.) However, it is a drastic means of disposing of litigation and should be allowed only when the right of the moving party is clear and free from doubt. (*Sons v. Taylor* (1991), 219 Ill. App. 3d 923, 925, 579 N.E.2d 1281.) Although the plaintiff does not have to try his case, he must provide a factual basis

which would arguably entitle him to judgment. (*Handy v. Sears, Roebuck & Co.* (1989), 182 Ill. App. 3d 969, 972, 538 N.E.2d 846.) A reviewing court will not reverse the determination that summary judgment is appropriate absent an abuse of the trial court's discretion such that the plaintiff's right to fundamental justice is violated. *Choi v. Commonwealth Edison Co.* (1991), 217 Ill. App. 3d 952, 956, 578 N.E.2d 33.

For the following reasons, we affirm the decision of the trial court.

I

The appellants argue that the plaintiffs' motion for summary judgment should have been granted and State Farm Fire's motion for summary judgment should have been denied. Appellants maintain the following. First, the umbrella policy stated that it would be automatically renewed unless cancelled. Second, the Illinois Insurance Code in effect at the time required: (1) that the umbrella policy issued to Gilbert contain a cancellation provision setting out the manner in which the policy could be cancelled; (2) that no notice of cancellation should be effective unless the notice was mailed to the insured; and (3) State Farm Fire was required to maintain proof of mailing of the cancellation notice on a recognized United States post office form. Third, although State Farm Fire claims it mailed a notice of cancellation to Gilbert, Gilbert denies receiving any notice of cancellation and State Farm Fire disregarded the Illinois Insurance Code by deliberately not maintaining proof of mailing of the cancellation notice, if any, on a recognized United States post office form. Fourth, allowing State Farm Fire to disregard the policy and the cancellation requirements of the Illinois Insurance Code would nullify the Code requirement that insurers must prove mailing of notices of cancellation by a standard of proof greater than normal and customary mailing practices.

In *Shiaras v. Chupp* (1975), 61 Ill. 2d 164, 334 N.E.2d 129, the Illinois Supreme Court clearly imposed the duty on an insured to renew his, her or its automobile liability policy by payment of a renewal premium before its maturity date in those cases where the insurer has indicated a willingness to renew the policy. The court stated:

> "We think it is clear that 'cancellation' refers to a unilateral termination by an insurer before the end of a policy period, while 'nonrenewal' refers to the automatic expiration of a policy at the end of the policy period." (*Shiaras*, 61 Ill. 2d at 167.)

Since *Shiaras*, the Insurance Code has been amended as follows:

" 'Cancellation' or 'cancelled' means the termination of a policy by an insurer prior to the expiration date of the policy. A policy of automobile or fire and extended coverage insurance which expires by its own terms on the policy expiration date unless advance premiums are received by the insurer for succeeding policy periods shall not be considered 'cancelled' or a 'cancellation' effected by the insurer in the event such premiums are not paid on or before the policy expiration date." (Ill. Rev. Stat. 1987, ch. 73, par. 755.13(g).)

Since the amendment our courts have held that cancellation and nonrenewal are not the same. See *First National Bank v. Country Mutual Insurance Co.* (1988), 175 Ill. App. 3d 860, 530 N.E.2d 521.

The appellants direct this court to the following cancellation clause contained in the umbrella policy:

"If we choose to cancel the policy, we will send notice to the address shown in the policy, We will give at least 30 days' notice of the date of our cancellation."

The appellants argue that the umbrella policy did not automatically lapse or expire because of the passage of time or nonpayment of the premium. The appellants maintain that, by the terms of the policy that State Farm Fire wrote, the only way for State Farm Fire to terminate the umbrella policy was to send plaintiffs notice of cancellation at least 30 days prior to the date of cancellation.

The appellants argue that the following provision of the Illinois Insurance Code in effect in 1986 is relevant to the present case:

"§143.11 Cancellation provisions. All companies authorized to transact in this State the kinds of business enumerated in Section 4 of the 'Illinois Insurance Code' shall include in their policies *** a cancellation provision setting out the manner in which such policies may be cancelled." (Ill. Rev. Stat. 1985, ch. 73, par. 755.11.)

The appellants maintain that in addition to the statutory requirement that the policy contain a cancellation provision, another section of the Illinois Insurance Code required State Farm Fire to mail the notice of cancellation to plaintiff, and to maintain proof of mailing on a recognized United States post office form. In 1986, section 143.14 of the Illinois Insurance Code provided:

"Notice of Cancellation. No notice of cancellation of any policy of insurance, to which Section 143.11 applies, shall be effective unless mailed by the company to *** the last mailing address known by the company. The company shall maintain proof of mailing of such notice on a recognized U.S. Post Office form.

A copy of all such notices shall be sent to the insured's broker if known, or the agent of record." Ill. Rev. Stat. 1985, ch. 73, par. 755.14.

At the hearing on the motions for summary judgment, the trial court stated:

"THE COURT: It's the finding of the court it is not necessary to rely on what has to be done in cases of cancellation because this was not a cancellation. Everybody in this room and everybody knows if you don't pay your premium your policy isn't renewed. The motion for summary judgment for Librizzi is denied. And the motion for summary judgment for State Farm [Fire] is granted."

The declarations page to the first policy on which the appellants rely provides in relevant part:

"Automatic Renewal: If the policy period is shown as twelve months, this policy will be renewed automatically subject to the premiums, rules, and forms in effect for each succeeding policy period. If the policy is terminated, we will give written notice in compliance with the policy provisions or as required by law."

The policy also provides:

"PERSONAL LIABILITY UMBRELLA POLICY AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy."

The applicable definition of "premium" states: "The sum paid or agreed to be paid by an insured to the underwriter (insurer) as the consideration for the insurance. The price for insurance protection for a specific period of exposure." (Black's Law Dictionary 1063 (5th ed. 1979).) Black's Law Dictionary defines "subject to" as: "Liable, subordinate, subservient, inferior, obedient to; governed or affected by; provided that; provided; answerable for." Black's Law Dictionary 1278 (5th ed. 1979).

Plaintiffs maintain that the umbrella policy did not "automatically" lapse or expire because of the passage of time and nonpayment of the premium, but rather that the umbrella policy "automatically" renewed and remained in effect, until or unless State Farm Fire complied with the applicable "cancellation" requirements. If we accept the plaintiffs' argument, the umbrella policy automatically renewed for two consecutive 12-month periods with no premium payments.

State Farm Fire argues:

"It is not true, as the plaintiffs urge, that the policy automatically renewed even if they failed to pay the premium. Rather, State Farm agreed to renew the policy 'automatically' (rather than at its sole option) 'subject to the premiums' and 'in return for the premium' which the plaintiffs admitted never paying in 1986, 1987 or at any time in 1988 prior to the accident."

■ Everything the appellants assert about cancellation is correct albeit irrelevant. State Farm Fire did not take any action to cancel Gilbert's policy before the end of the 12-month policy period. Although Gilbert maintains that he did not receive the premium renewal notice, the terms of the policy itself manifested State Farm Fire's willingness to renew the policy. We agree with State Farm Fire and find that the present case involves a nonrenewal on the part of the Librizzis, rather than an attempted cancellation on the part of State Farm Fire.

Since we have determined that this case involves a nonrenewal rather than a cancellation, the aforementioned provisions of the Illinois Insurance Code relating to cancellation are inapplicable to the present case. Accordingly, we need not address the question of whether or not State Farm Fire acted in accordance with these provisions.

## II

Appellants argue that even if summary judgment could not be granted for Gilbert based upon State Farm Fire's failure to maintain proof of mailing of the cancellation notice on a United States post office form, summary judgment should not have been granted to State Farm Fire because there were disputed issues of material fact as to whether State Farm Fire mailed a premium notice or cancellation notice to Gilbert and whether the alleged mailing of the cancellation notice would have reached Gilbert within 30 days of mailing.

■ In order to defeat a motion for summary judgment, the disputed issues of fact must be material and do not warrant the denial of summary judgment if they are not related to the essential elements of the defense. (*Solomon v. Baron* (1984), 123 Ill. App. 3d 255, 261, 462 N.E.2d 756.) Appellants' argument is premised on the idea that proof of mailing is required in this case. We have found that this was a case of nonrenewal rather than cancellation; proof of mailing was not required under the facts of this case either under the Illinois Insurance Code or the umbrella policy. Accordingly, the alleged disputed issues of fact are not material to the essential elements of the defense.

### III

■ Finally, appellants argue that the reason given by the trial court in granting State Farm Fire's motion for summary judgment, namely, that this was a case of "nonrenewal" rather than "cancellation," is wrong because: (1) the umbrella policy did not contain a lapse or nonrenewal provision; (2) by its own terms the personal umbrella policy was automatically renewed each annual anniversary date; (3) the alleged cancellation notice was allegedly mailed one month after the 1986 anniversary date, when the policy had automatically been renewed to October 25, 1987, so the alleged termination of the policy could not have been a nonrenewal; and (4) State Farm Fire itself designated the alleged termination notice a "notice of cancellation." The Illinois Insurance Code distinguishes "cancellation" and "non-renewal."

"(d) 'Renewal' or 'to renew' means the issuance and delivery by an insurer of a policy superseding at the end of the policy period a policy previously issued and delivered by the same insurer or the issuance and delivery of a certificate or notice extending the term of a policy beyond its policy period or term; however, any successive policies issued by the same insurer to the same insured, for the same or similar coverage, shall be considered a renewal policy.

\* \* \*

(g) 'Cancellation' or 'cancelled' means the termination of a policy by an insurer prior to the expiration date of the policy. A policy of automobile or fire and extended coverage insurance which expires by its own terms on the policy expiration date unless advance premiums are received by the insurer for succeeding policy periods shall not be considered 'cancelled' or a 'cancellation' effected by the insurer in the event such premiums are not paid on or before the policy expiration date." Ill. Rev. Stat. 1987, ch. 73, par. 755.13.

■ The Insurance Code also contains a provision dealing with giving notice of an intention not to renew.

"a. No company shall fail to renew any policy of insurance, defined in subsections (a), (b) and (c) of Section 143.13, to which Section 143.11 applies, unless it shall send by mail to the named insured and the mortgagee or lien holder, at the last mailing address known by the company, at least 30 days advance notice of its intention not to renew. The company shall maintain proof of mailing of such notice on a recognized U.S.

Post Office form or a form acceptable to the U.S. Post Office. An exact and unaltered copy of such notice shall also be sent to the insured's broker, if known, or the agent of record and to the last known mortgagee or lien holder as named in the policy at the mortagee's last known address. However, where cancellation is for nonpayment of premium, at least 10 days notice of cancellation shall be given.

(b) This Section does not apply if the company has manifested its willingness to renew directly to the named insured." Ill. Rev. Stat. 1987, ch. 73, par. 755.17.

We have already determined that the trial court was correct in determining that this was a case of nonrenewal rather than cancellation. Appellants maintain that the policy was "renewed automatically" at the expiration of each policy period, thus the policy could never not automatically renew. We disagree as previously stated, the plaintiffs' failure to pay the premium for the subsequent 12-month period resulted in a nonrenewal of the policy by the plaintiffs. The appellants also point out that the Librizzis dispute having received the premium renewal notice. However, State Farm Fire manifested its willingness to renew the policy directly to the Librizzis, in the policy itself, by providing for "automatic renewal," subject at all times to the premium and in return for it.

Appellants further argue that the alleged notice of cancellation was allegedly issued November 19, 1986, after the policy had automatically renewed. We find the fact that State Farm Fire would allow a grace period to pay the premium fails to indicate that this was a case of cancellation rather than a nonrenewal.

■ Appellants indicate that the final problem is that in 1986 State Farm Fire had itself concluded that a notice of cancellation was necessary because it claims to have sent out the notice of cancellation. Appellants acknowledge that the cancellation provisions of the insurance code do not pertain to situations in which the policy automatically expires at the end of the policy period. (*First National Bank v. Country Mutual Insurance Co.* (1988), 175 Ill. App. 3d 860, 530 N.E.2d 521.) State Farm Fire offered to extend the time for payment, without any interruption in coverage, to December 22, 1986. The failure of the plaintiffs to remit the premium on or before the extended due date did not mean, under the provisions of the policy, that State Farm Fire had cancelled the policy as opposed to the Librizzis failing to renew the policy.

This case arose as the result of a tragic accident. It appears that the failure to pay the insurance premium was not a conscious decision

on the part of the insured. However, no matter how much we dislike the result where the inadvertent or unconscious failure to renew a policy by a long-time policy holder precludes adequate insurance coverage, we must follow the decisions of the Illinois Supreme Court as well as the State legislature.

Accordingly, for all the reasons set forth above we must affirm the decision of the trial court.

Judgment affirmed.

McNULTY, P.J., and GORDON, J., concur.