EMPLOYERS INSURANCE OF WAUSAU and Nucor Corporation, Plaintiffs–Appellants,

v.

Roger K. STOPHER, Julia Stopher, and Westfield National Insurance Co., Defendants–Appellees.

No. 97–2757.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 15, 1998.

Decided Sept. 15, 1998.

Rehearing Denied Oct. 13, 1998.

Edward L. Murphy, Jr. (argued), Diana C. Bauer, Miller, Carson, Boxberger & Murphy, Fort Wayne, IN, for Employers Insurance of Wausau and Nucor Corporation.

Daniel Sigler, Zwick & Sigler, Decatur, IN, for Roger K. Stopher and Julia Stopher.

Thomas C. Ewing, James J. Shea (argued), Daniel J. Palmer, Hunt Suedhoff, Fort Wayne, IN, for Westfield National Insurance Company.

Before POSNER, Chief Judge, and COFFEY and RIPPLE, Circuit Judges.

COFFEY, Circuit Judge.

The plaintiffs-appellants, Employers Insurance of Wausau ("Wausau") and Nucor Corporation ("Nucor") sued Roger and Julia Stopher and Westfield National Insurance Company ("Westfield"), asking the federal district court to declare that an insurance policy issued by Wausau to Nucor did not provide uninsured/underinsured motorist ("UM/UIM") coverage to Roger Stopher for an automobile accident in which he was involved. At the time of the accident, Stopher was an employee of one of Nucor's affiliated corporations and was driving a vehicle owned by another of Nucor's affiliated corporations. The plaintiffs argued that Nucor had rejected the UM/UIM coverage prior to the date of accident, but the defendants claimed that

the coverage was not properly rejected until after the accident. The district court granted summary judgment in favor of the defendants and denied the plaintiffs' cross-motion for summary judgment. Wausau and Nucor appeal this decision. We reverse.

## I. BACKGROUND

On September 28, 1992, Roger Stopher was involved in an automobile accident in Indiana with one Larry L. Swearingen, an underinsured motorist. At the time of the accident, Stopher was employed by Nucor Fasteners Sales Corporation ("Nucor Fasteners")[1] and was driving a truck owned by Vulcraft Carrier Corporation ("Vulcraft"). Nucor Fasteners and Vulcraft were listed as additional named insureds on the policy Wausau issued to Nucor. Stopher asserted a claim for underinsured motorist benefits under his own automobile liability insurance policy which was issued by Westfield. Westfield denied the claim on the grounds that Nucor's Wausau policy provided the primary underinsured coverage.

On January 1, 1992, Wausau issued an insurance policy to Nucor (the "Policy"). Under the terms of the Policy, Nucor was entitled to reject UM/UIM coverage for the states that did not require UM/UIM insurance. The Policy also contained a reimbursement provision which provided that the insureds had a $500,000 reimbursement obligation for any casualty losses sustained under the Policy. In light of the reimbursement obligation, Nucor determined that it and its affiliated corporations should reject UM/UIM coverage in those states where it was not required, including Indiana. Indiana law requires insurance companies to offer UM/UIM coverage in each automobile or motor vehicle liability policy, but the insured has the right to reject such coverage. Ind. Code § 27–7–5–2 (1993 & Supp.1994). In pertinent part, § 27–7–5–2 provides:

> (b) The named insured of an automobile or motor vehicle liability policy has the right, in writing, to:

(1) reject both the uninsured motorist coverage and the underinsured motorist coverage provided for in this section; or

(2) reject either the uninsured motorist coverage alone or the underinsured motorist coverage alone, if the insurer provides the coverage not rejected separately from the coverage rejected.

On July 6, 1992, Terry Lisenby, on behalf of Nucor, executed a form rejecting UM/UIM coverage in Indiana. Lisenby was the Corporate Controller of Nucor and the Assistant Treasurer of Vulcraft and Nucor Fasteners. According to Nucor, Nucor and its affiliated corporations had given Lisenby the authority to select and procure insurance coverage for the corporations. On October 7, 1992, nine days after Stopher's accident, Wausau issued a "Change Endorsement" removing the Indiana UM/UIM coverage and purporting to be effective retroactively as of January 1, 1992.

The Wausau Policy contains two general provisions that the district court determined were relevant in deciding when Nucor's rejection of the UM/UIM coverage became effective: a cancellation provision and a change provision. These provisions provide as follows:

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

 a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

 b. 30 days before the effective date of cancellation if we cancel for any other reason.

---

**1.** The parties dispute the identity of Stopher's employer. In response to Westfield's Request for Admissions, Nucor admitted that Stopher was employed by Nucor Fasteners Sales Corporation. Nucor later tried to amend that admission after determining that Stopher was actually employed by Nucor Fasteners Division, but the district court refused to permit the amendment. For purposes of this appeal, therefore, Stopher is considered an employee of Nucor Fasteners Sales Corporation.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.
4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
5. If this policy is canceled, we will send the First Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.
6. If notice is mailed, proof of mailing will be sufficient proof of notice.

### B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of the policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

In determining when the rejection of UM/UIM coverage became effective, the district court focused exclusively on the language contained in the change and cancellation provisions of the Policy. The judge reasoned that under the Policy's plain language the cancellation provision related to the cancellation of the entire Policy, while the change provision related to a modification of part of the Policy. The court further stated that Wausau had treated the rejection of UM/UIM coverage as a change to the Policy by issuing a change endorsement, and it could not now argue that the rejection was a cancellation. The court therefore found that Nucor's rejection of UM/UIM coverage constituted a change of the Policy, which required compliance with the change provision set forth in the Policy, and that the rejection was not effective until Wausau issued the change endorsement. Because the accident occurred nine days before Wausau issued the change endorsement, the district court held that liability under the underinsured motorist liability coverage was fixed prior to the rejection of UM/UIM coverage and that Stopher was entitled to make an underinsured motorist claim under the Policy.

## II. DISCUSSION

### A. Standard of Review and Applicable Law

We review de novo the district court's decision granting summary judgment in favor of the defendants and denying the plaintiffs' cross-motion for summary judgment. *Ophthalmic Mut. Ins. Co. v. Musser,* 143 F.3d 1062, 1066 (7th Cir.1998). The grant of summary judgment is appropriate only " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Huntzinger v. Hastings Mut. Ins. Co.,* 143 F.3d 302, 306 (7th Cir.1998) (quoting Fed. R. Civ. P. 56(c)); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The interpretation of an insurance policy, even an ambiguous policy, presents questions of law that are appropriately resolved by summary judgment. *West Suburban Bank of Darien v. Badger Mut. Ins. Co.,* 141 F.3d 720, 723–24 (7th Cir.1998); *Colonial Penn Ins. Co. v. Guzorek,* 690 N.E.2d 664, 667 (Ind.1997).

The parties have not challenged the choice of law. Accordingly, we will not disturb the district court's application of Indiana law, the law of the forum state. *See McFarland v. General American Life Ins. Co.,* 149 F.3d 583, 585–86 (7th Cir.1998); *Wood v. Mid-Valley Inc.,* 942 F.2d 425, 426 (7th Cir.1991) ("The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits."). Because, to date, the Indiana Supreme Court has not addressed the issue of when rejection of UM/UIM coverage becomes effective, " '[o]ur duty is to determine, as best we can, how this dispute would be resolved by [that court].' " *Huntzinger,* 143 F.3d at 308 (quoting *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.,* 40 F.3d 146, 150 (7th Cir.1994) (citation omitted)).

### B. Authority of Nucor to Reject Coverage

■ Because the district court found that Nucor's rejection of UM/UIM coverage was not effective until Wausau issued the change endorsement nine days after the accident occurred, the district court did not reach the issue of whether Nucor had the authority to reject UM/UIM coverage on behalf of Nucor Fasteners and Vulcraft, who were listed as Additional Named Insureds under the Policy. We address this issue as a threshold matter, however, because if Nucor did not have authority to reject UM/UIM coverage on behalf of Nucor Fasteners and Vulcraft, it is irrelevant whether Nucor did in fact reject UM/UIM coverage prior to the date of the accident.

The defendants claim that § 27–7–5–2 requires each named insured to reject UM/UIM coverage in writing. Section 27–7–5–2, however, simply provides that such coverage must be rejected in writing by "the named insured." The defendants rely on the Oklahoma Supreme Court's decision in *Plaster v. State Farm Mut. Auto. Ins. Co., Inc.*, 791 P.2d 813, 814 (Okla.1989), which held that where the insurance policy listed both a husband and wife as "named insureds," each named insured must execute a written rejection of UM/UIM coverage. A number of courts in other jurisdictions have reached a different result, focusing instead on the intent of the insureds to reject UM/UIM coverage. For instance, in *Weir v. American Motorists Ins. Co.*, 63 Wash.App. 187, 816 P.2d 1278 (1991), the court held that an insurance broker could reject UM/UIM coverage on behalf of an insured where the insured's intent to reject the coverage was clear. "It is clear from the record [the insured] did not want UIM coverage and never paid a premium for it. That intent is manifest in its proposal and policy endorsement. To find coverage under these circumstances would not further any public policy and would be contrary to the insurance contract bargained for between the parties." *Id.* 816 P.2d at 1281. Similarly, in *Haney v. Zurich Ins. Co.*, 680 So.2d 1270, 1273 (La.Ct.App. 1996), the court held that a named insured's rejection of UM/UIM coverage operated as a rejection of the coverage on behalf of all the insured's subsidiary corporations that were named in the insurance policy.

According to the Policy's language in this case, Nucor represented to Wausau that it owned all of the corporate stock in Nucor Fasteners and Vulcraft. Nucor also contends that Lisenby, as the Corporate Controller of Nucor and the Assistant Treasurer of Nucor Fasteners and Vulcraft, was given sole authority by Nucor and its affiliated corporations to select and obtain insurance coverage on their behalf for the year 1992 and several years prior to 1992. Nucor's assertions and the Policy's language indicate that Wausau and Nucor intended for Nucor to act on behalf of the additional named insureds. The "Additional Named Insured Endorsement" provision in the Policy provides:

A. The Named Insured shown in the Declarations is authorized to act for each additional Named Insured listed in all matters pertaining to this insurance including, but not limited to, receipt of:

a. Notice of cancellation:

b. Any returned premium;

c. Any dividends which we may declare.

 * * *

D. This endorsement is being placed on the policy only because the Named Insured shown in the Declarations has told us that it and the additional Named Insured's interest listed below are owned or financially controlled by the same interest.

It appears that Nucor acted on behalf of Nucor Fasteners and Vulcraft in procuring the Policy. The defendants believe that Nucor Fasteners and Vulcraft and their employees are entitled to recover under the Policy. It therefore is inconsistent for the defendants to argue that Nucor could obtain the policy on behalf of Nucor Fasteners and Vulcraft, but that Nucor could not bind Nucor Fasteners and Vulcraft with respect to one aspect of the Policy—the rejection of UM/UIM coverage. *See Messerly v. State Farm Mut. Auto. Ins. Co.*, 277 Ill.App.3d 1065, 214 Ill.Dec. 794, 662 N.E.2d 148, 150–51 (1996) (rejecting *Plaster* and collecting cases from various states holding that the rejection of UM/UIM

coverage by one named insured rejected such coverage for all of the named insureds). Accordingly, Nucor had the authority to reject UM/UIM coverage on behalf of the additional named insureds.

#### C. The Policy and the Intent of the Parties

■ Wausau and Nucor argue that the district court erred in focusing solely on whether the rejection of UM/UIM coverage was a "change" or a "cancellation" under the language of the Policy. We agree. The Policy does not clearly provide whether Wausau and Nucor intended that a change endorsement was necessary to effectuate rejection of UM/UIM coverage, and we therefore must look to the intent of the parties. Construing the Policy in the light most favorable to Nucor, we believe that Wausau and Nucor intended Nucor's rejection to be effective upon Nucor's unilateral rejection of the coverage. Based on the Policy's language, the intent of Wausau and Nucor, and the Indiana statute governing UM/UIM coverage, we hold that Nucor's rejection of UM/UIM coverage was effective upon Nucor's execution of the rejection form.

"In construing an insurance policy, the court must ascertain the intent of the parties to the contract by construing the policy as a whole while giving due regard to the risk undertaken, the subject matter that is insured, and the purposes of the entire contract." *Employers Ins. of Wausau v. James McHugh Constr. Co.*, 144 F.3d 1097, 1104 (7th Cir.1998); *see also Colonial*, 690 N.E.2d at 669 ("In construing an insurance contract, we ultimately must give effect to the intent and reasonable expectations of the parties as expressed in the contract."). Indiana law requires that the unambiguous language of an insurance policy' be given its plain and ordinary meaning. *Huntzinger*, 143 F.3d at 309 (citing *Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind.1985)). However, if the language is ambiguous because it is susceptible to more than one reasonable interpretation, the court construes the language in the light most favorable to the insured. *Id.* (citations omitted).

Westfield and the Stophers argue that Nucor's intent to reject UM/UIM coverage is irrelevant. Instead, they claim that the Policy is clear and unambiguous, and that Wausau and Nucor's intent must be examined only under the terms of the Policy. The defendants assert that rejection of UM/UIM coverage constituted a change to the Policy, and, at the time Wausau and Nucor agreed to the terms of the policy, they intended that a change endorsement would be required to effect any change to the Policy. The defendants therefore conclude that Wausau and Nucor cannot now argue that they intended the rejection of UM/UIM coverage to be effective without the issuance of a change endorsement.

As Wausau and Nucor argue, requiring Wausau to issue change endorsements was intended to prevent Wausau from unilaterally changing the Policy without providing prior notice to Nucor. However, the same need for protection is not implicated when the insured, as opposed to the insurer, is requesting the change.[2] If we were to find that Wausau was required to issue a change endorsement to effect Nucor's written rejection of UM/UIM coverage, Nucor would suffer harm, rather than enjoy additional protection. Nucor would be exposed to the risk of a $500,000 reimbursement obligation simply because Wausau failed to promptly issue the change endorsement.

■ Construing the Policy in the light most favorable to the insured, Nucor, we hold that Nucor's rejection of the UM/UIM coverage was effective when Lisenby signed the rejection form. Wausau explained to this court that it issued a change endorsement regarding Nucor's rejection of UM/UIM coverage simply as a means to "tidy up" its policy and reflect the cancellation of the UM/UIM coverage. We recognize that Wausau's issuance of a change endorsement appears inconsistent with its present position that Nucor canceled UM/UIM coverage when it executed the rejection form. Nonetheless, we believe it is more consistent with the intent of Wausau and Nucor to identify Nu-

2. The defendants argue that the change endorsement requirement protects the insured, whom they attempt to identify as Roger Stopher. How-

ever, Nucor is in fact the named insured in the Policy.

cor's rejection of UM/UIM coverage as a cancellation of part of the Policy. Unlike a change in the terms of the Policy, both parties need not agree to Nucor's cancellation of part of its coverage. Under the Policy, cancellation of coverage does not require any act by the insurer. Instead, the insured may cancel coverage by unilateral act. By the existing terms of the Policy, Nucor was entitled to reject UM/UIM coverage. By executing the written rejection form, Nucor did everything possible to reject UM/UIM coverage.

 If we were to accept the defendants' interpretation of the Policy, Nucor would be exposed to additional risks as a result of Wausau's failure to promptly issue the change endorsement after Nucor attempted to reject the coverage. In addition to a $500,000 reimbursement obligation, Nucor could be exposed to additional obligations under the Policy through Wausau's manipulation of when it issued the change endorsement. Wausau presumably could continue to charge Nucor premiums for UM/UIM coverage by delaying the issuance of a change endorsement, even after Nucor had evidenced a clear intent to reject such coverage. An insurer cannot bind an insured to coverage it does not want. Nor is an insured entitled to the benefit of coverage that it clearly intended to reject. As the New Mexico Court of Appeals has stated,

> If, in cases such as this, we were to require an insurer to furnish UM coverage when the insured had no intention of securing such protection, we would be violating the doctrine of freedom of contract. Although we acknowledge that UM coverage is important given the number of uninsured drivers in New Mexico, we decline to require an insurer to provide UM coverage in the face of clear evidence that the insured did not choose such coverage and knew it was not included in the policy.

*Vigil v. Rio Grande Ins. of Santa Fe*, 124 N.M. 324, 950 P.2d 297, 304–05 (App.1997). Nucor's execution of the written rejection form evidenced its unequivocal intention to waive UM/UIM coverage, and this rejection complied with § 27–7–5–2 and Wausau and Nucor's intent under the Policy.

## D. Statutory Law

Under Indiana law, insurance companies are required to make UM/UIM coverage available in each automobile or motor vehicle liability policy. Ind.Code § 27–7–5–2; *Colonial Penn*, 690 N.E.2d at 672. However, the named insured has the right to reject such coverage in writing. *Marshall v. Universal Underwriters Ins. Co.*, 673 N.E.2d 513, 516 (Ind.Ct.App.1996). Section 27–7–5–2 does not specify when the insurer's rejection of UM/UIM coverage becomes effective. Wausau and Nucor argue that, under the plain language of the statute, the insured need only execute a written rejection for the rejection to become effective immediately. Westfield and the Stophers respond that the statute merely sets forth the minimum requirements to effect a valid rejection of UM/UIM coverage and that Wausau was permitted to assume more responsibility than required under the statute as long as the additional Policy terms were not in contravention of the statute's language or intent.

Although Indiana courts have not directly addressed the question of when rejection of UM/UIM coverage becomes effective, the courts have held that an insured need only sign a written form to validly reject such coverage. *See, e.g., Marshall*, 673 N.E.2d at 517. Finding that the language of § 27–7–5–2 was clear and unambiguous, the *Marshall* court stated:

> The plain and ordinary meaning of the statutory language establishes that 'reject in writing' means the insurer must affirmatively indicate in writing, rather than by spoken communication, that it is his or her choice to not accept UM/[UIM] coverage. In order for a rejection to be valid, it must be voluntary, because a forced rejection is contrary to the express language of the statute. While mandating verification of a rejection, the statute does not require use of specific, magic words.

*Id.* at 516–17 (internal citation omitted).

Because Indiana state law addressing this issue is currently undeveloped, we look to relevant authority from other jurisdictions. *Cincinnati*, 40 F.3d at 150. Other courts, applying state statutes similar to § 27–7–5–2, have held that rejection of UM/UIM cover-

age is effective when the rejection form is executed. *See, e.g., Koenig v. Mission Ins. Co.,* 106 Ariz. 75, 471 P.2d 271, 273 (1970); *Baum v. Allstate Ins. Co.,* 496 So.2d 201, 203–04 (Fla.Dist.Ct.App.1986). In *Baum,* the court found that written rejection of UM/UIM coverage had to be effective upon execution of the rejection form in order to protect the insurer. The insureds in *Baum* argued that their rejection of UM/UIM coverage was not valid because the rejection was not knowingly made. The court examined the applicable Florida statute, which, like the Indiana statute, required insurance companies to provide UM/UIM coverage unless the insured rejected such coverage. The court reasoned that the statute obviously was not intended to provide the insured UM/UIM coverage without paying for it or else the statute would not provide a method by which such coverage could be rejected. "If such a written rejection is not valid upon signature, one is left helpless to suggest how else an insurer can protect itself from providing coverage, for which it receives no premiums.... " *Id.* at 204.

Under the particular facts of this case, construing Nucor's rejection of UM/UIM coverage as effective upon its execution of the form rejection is consistent with the Indiana courts' interpretation of the policy behind § 27-7-5-2. Indiana courts consider the policy underlying § 27-7-5-2 in relation with the Indiana Financial Responsibility Act, Ind.Code § 9-25-4-1, which requires persons to have proof of financial responsibility before they may register or operate their vehicles on Indiana public highways. *See City of Gary v. Allstate Ins. Co.,* 612 N.E.2d 115, 117 (Ind.1993). The Indiana Supreme Court has explained that "the purpose of uninsured motorist coverage is to put the injured party in the place they would have been if the other person had complied with the financial responsibility law." *Id.* Thus, if *the injured party is compensated for his loss to the extent that he would have been had the other party carried sufficient insurance, the goal of § 27-7-5-2 has been satisfied.*

In *Colonial,* the Indiana Supreme Court recently considered the policy advanced by § 27-7-5-2. 690 N.E.2d 664. In that case, one of the defendants, Dorothy Guzorek, made material misrepresentations in her application for an automobile insurance policy with Colonial Penn. After Colonial Penn issued an insurance policy to Guzorek, her husband collided with two other vehicles. When the drivers of the other vehicles sued Guzorek and her husband, Colonial Penn brought a declaratory action, claiming that Guzorek's policy was void *ab initio* based on her material misrepresentations. The Indiana Supreme Court held that it would not be contrary to the statute's policy to permit Colonial Penn to void Guzorek's policy *ab initio* because the other drivers had uninsured motorist coverage and would be compensated for their injuries. The court stated that "[t]here is no injustice in placing the loss with the third party's insurer [ ], who has presumably been compensated through its premiums for accepting the risk of an uninsured tortfeasor." *Id.* at 672. In reaching this decision, the supreme court agreed to a limited extent with the reasoning in *Motorists Mut. Ins. Co. v. Morris,* 654 N.E.2d 861 (Ind.Ct.App.1995), in which the court stated that "the most agreeable disposition of this case requires that we consider the policy as advanced by both statutory schemes (the financial responsibility law and the uninsured motorist provision) as well as traditional legal and equitable principles as they apply to insurance policies." *Id.* at 863.

Here, the policy advanced by § 27-7-5-2 is satisfied, regardless of whether Stopher obtained UIM coverage from Wausau or his own insurance carrier, Westfield. Because we believe that the Indiana Supreme Court would find that Nucor's rejection of UM/UIM coverage became effective upon its execution of a written rejection form, UIM coverage is not available to Stopher through Nucor's Policy issued by Wausau. Instead, Stopher may pursue his UIM liability claim through his own policy issued by Westfield, as he originally attempted to do. Westfield already has been compensated for taking on the risks posed by uninsured motorists through Stopher's payment of a premium for UM/UIM coverage.

## III. CONCLUSION

For the foregoing reasons, we reverse the district court's entry of judgment in favor of

Westfield and the Stophers. Additionally, we reverse the district court's order denying Wausau and Nucor's cross-motion for summary judgment and remand the case with directions to enter summary judgment in favor of Wausau and Nucor.

REVERSED and REMANDED.

RIPPLE, Circuit Judge, dissenting.

I respectfully part company with my colleagues because, in my view, the language of the insurance contract between Wausau and Nucor is unambiguous. Under the plain wording of the policy, Nucor's rejection of the UM/UIM coverage constituted a *change* in the terms of the policy, not a *cancellation* of the policy, and that change did not become effective until Wausau's issuance of an endorsement. Wausau, however, did not issue the endorsement changing the policy to exclude the UM/UIM coverage until nine days after Mr. Stopher's accident. Accordingly, at the time of the accident, Mr. Stopher had UM/UIM coverage under the Wausau policy.

Under Indiana law, the methodology we must apply to the interpretation of an insurance policy is well established. If the policy's language is clear and unambiguous, "it should be given its plain and ordinary meaning." *Tate v. Secura Ins.*, 587 N.E.2d 665, 668 (Ind.1992). "[O]ur goal is to ascertain and enforce the parties' intent *as manifested in the insurance contract.*" *American Family Mut. Ins. Co. v. National Ins. Ass'n*, 577 N.E.2d 969, 971 (Ind.Ct.App.1991) (emphasis added). Indeed, as in any contract matter, "the intent relevant ... is not the parties' subjective intents but their outward manifestations of it." *Holloway v. Giganti, Inc.*, 540 N.E.2d 97, 99 (Ind.Ct.App.1989). Accordingly, "[w]e cannot extend coverage beyond that provided in the contract and we may not rewrite the plain and unambiguous language of the insurance contract." *American Family*, 577 N.E.2d at 971.

In light of these principles, we must look to the plain wording of the policy to determine whether Nucor's rejection of UM/UIM coverage constituted a *change* in the terms of the policy or a *cancellation* of the policy. The relevant provisions are as follows:

A. CANCELLATION

1. The first Named Insured shown in the Declarations *may cancel this policy* by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

 a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

 b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of the policy with our consent. *This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.*

Wausau Policy (emphasis added).

In my view, the above language, given its plain and ordinary meaning, is clear and unambiguous: A "cancellation" refers to an action which terminates the entire policy; a "change" refers to an action which modifies the policy but after which the policy remains in effect. Indeed, under Indiana law, "the term 'cancellation' refers to the termination of a policy prior to the end of the policy period." *American Family Mut. Ins. Co. v.*

*Ramsey,* 425 N.E.2d 243, 244 (Ind.Ct.App. 1981); *accord State Farm Mut. Auto. Ins. Co. v. White,* 563 F.2d 971, 974 n. 2 (9th Cir.1977) (applying Montana law); *accord Ohran v. National Auto. Ins. Co.,* 82 Cal. App.2d 636, 187 P.2d 66, 70 (1947); *Librizzi v. State Farm Fire & Cas. Co.,* 236 Ill.App.3d 582, 177 Ill.Dec. 751, 603 N.E.2d 821, 825 (1992); *First Nat'l Bank v. Watts,* 462 N.W.2d 922, 926 (Iowa 1990); *Waynesville Sec. Bank v. Stuyvesant Ins. Co.,* 499 S.W.2d 218, 220 (Mo.Ct.App.1973); *Struve Enters., Inc. v. Travelers Ins. Co.,* 243 Neb. 516, 500 N.W.2d 580, 583–84 (1993).[1]

In this case, Nucor's rejection of UM/UIM coverage did not terminate the policy; instead, the policy continued but without UM/UIM coverage. Under the above definition, therefore, Nucor's rejection of UM/UIM coverage must be understood as a change in its policy with Wausau, not a cancellation of that policy. Accordingly, under the plain wording of the policy, that change did not take effect until Wausau issued an endorsement changing the policy. Because Wausau did not issue the change endorsement until after Mr. Stopher's accident, the UM/UIM coverage in the Wausau policy was in effect at the time of the accident.

This conclusion is supported further by Wausau's actions. Specifically, after receiving Nucor's letter rejecting the UM/UIM coverage, Wausau issued a *"change* endorsement" in order to effectuate Nucor's rejection of that coverage. The issuance of such an endorsement would not be necessary if Wausau and Nucor viewed the rejection of UM/UIM coverage to be a "cancellation." Accordingly, given Wausau's issuance of the "change endorsement," I find it difficult to credit its present assertion that the effective date of Nucor's rejection of UM/UIM coverage should be governed by the "cancellation" provision of its policy. In this regard, it is

important to note that, under Indiana law, Wausau is required to provide UM/UIM coverage to its Indiana insureds, and an insured's rejection of such coverage must be in writing. *See* Ind.Code § 27–7–5–2. Therefore, an insurer has a strong interest in demonstrating its compliance with this statutory directive by making an insured's rejection of UM/UIM coverage a matter of record. Under this policy, Wausau satisfies that interest by treating an insured's cancellation of UM/UIM coverage as a change to the policy and issuing a "change endorsement" to that effect.

In reaching its decision, the majority expresses the concern that, under the above interpretation of the policy, "Nucor would be exposed to additional risks as a result of Wausau's failure to promptly issue the change endorsement after Nucor attempted to reject the coverage." *Ante* at 11. Specifically, the majority worries that "Nucor could be exposed to additional obligations under the Policy through Wausau's manipulation of when it issued the change endorsement. Wausau presumably could continue to charge Nucor premiums for UM/UIM coverage by delaying the issuance of a change endorsement, even after Nucor had evidenced a clear intent to reject such coverage." *Id.* Although this is a valid concern, it is not one which should impact our decision today. The record contains no suggestion of such manipulation in this case. Moreover, in the event that an insurer deliberately delays making an agreed-upon change, the insured is not without a remedy. *See Erie Ins. Co. v. Hickman,* 622 N.E.2d 515, 519 & n. 1 (Ind.1993) (recognizing a cause of action for the tortious breach of an insurer's duty to deal with its insured in good faith and noting that such an action is recognized by a majority of states); *see also* Lee R. Russ & Thomas F. Segalla,

---

1. The distinction between the "cancellation" of a policy and a "change" to the policy terms is set forth clearly in *Couch on Insurance 3d:*

 The modification of an existing contract, with the contract thereafter remaining in force as thus modified, is distinct from a cancellation which brings the policy to an end. In a strict sense, the agreement to modify the original contract manifests the intent that the original contract shall no longer govern the rights of the parties. Nevertheless, the dominant intent

 when a modification is made is that the original contract remain in force as modified, as distinguished from cancelling the original contract and substituting therefor a different contract.

 2 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 30:3 (3d ed.1997); *cf.* U.C.C. § 2–106(4) (stating that "'[c]ancellation' occurs when either party puts an end to the contract … and its effect is the same as that of 'termination'").

*Couch on Insurance 3d* § 25:7 (stating that "insurer may be estopped from denying liability because of its fault or its agent's fault in failing to properly set forth an agreed-to alteration").

I would affirm the judgment of the district court.